369 P.2d 571

The CLEARWATER TIMBER PROTEC-
TIVE ASSOCIATION, an unincorporated
association; E. C. Rettig, President; Rog-
er L. Guernsey, Vice President; Adrian
G. Nelson, Secretary-Treasurer; A. B. Cur-
tis, Chief Fire Warden; E. C. Rettig, Di-
rector; Roger L. Guernsey, Director;
Leonard Cardiff, Director; R. G. Sacker-
son, Director; Ralph Schmidt, Director;
L. Cardiff, Inc.; Milwaukee Land Com-
pany; Hunt Foods and Industries, Inc.,
(formerly Ohio Match Company); Pot-
latch Forests, Inc.; Grace C. Rubedew;
Schaeffer Hitchcock Company; Schmidt
Brothers; State of Idaho; White Pine
Lumber Company, Plaintiffs,

v.

The DISTRICT COURT OF the SECOND
JUDICIAL DISTRICT of the State of Ida-
ho, IN AND FOR the COUNTY OF CLEAR-
WATER, Hon. Jack McQuade, Judge, De-
fendant.

No. 9056.

Supreme Court of Idaho.

Feb. 20, 1962.

Rehearing Denied March 26, 1962.

Morgan & Morgan, Lewiston, for plain-
tiffs-applicants.

Eli Rapaich of Rapaich & Knudson, Lewiston, for defendant, also appearing for James Raymond Wooderchak and wife, real parties in interest.

**McFADDEN, Justice.**

This original proceeding in prohibition was instituted to restrain the defendant District Court from proceeding further in an action brought before it by James R. Wooderchak and his wife against the plaintiffs for damages for the death of their son on August 28, 1956, allegedly having been caused by the negligence of the plaintiffs here.

The Wooderchaks heretofore filed a claim before the Industrial Accident Board, naming as employer the Clearwater Forest Protective District (herein referred to as the District, to distinguish it from the Plaintiff Association), and its surety. This claim was later dismissed by the Board as to the Wooderchaks, by reason of a letter from their counsel requesting dismissal, but the Board ordered payment to the State of Idaho, as *parens patria,* under the provisions of I.C. § 72–301.

The District Court action of the Wooderchaks referred to, joined as defendants all the plaintiffs in this action, and the Northern Pacific Railway Company, which company did not join in this application. The complaint in the lower court alleged the Association is unincorporated and consists of the other defendants named in the lower court, as members, officers, or directors. It is further alleged that the State Forester, under authority of I.C. § 38–105, created the District, and appointed a fire warden; that their deceased son was an employee of the District, and working under the direction and control of the fire warden or his subordinates. This complaint alleges the State Forester, under authority of I.C. § 38–134, entered into an agreement with the Association, and the State Board of Land Commissioners of Idaho, and as a part of this contractual relationship, the Association furnished a jeep vehicle used by the Wooderchak youth at the time of the accident.

Negligence is charged in the complaint against the Association in the furnishing of the jeep in its dangerous condition, with actual or constructive knowledge on the part of the defendants of its condition. It is claimed that such negligence was the primary cause of the accident and death of the Wooderchak youth.

The district court defendants (plaintiffs here) moved to dismiss the complaint on the ground it failed to state a claim upon which relief could be granted, and also

of the matter, it being vested exclusively that the District Court had no jurisdiction in the Industrial Accident Board. This motion was denied, and this application for Writ of Prohibition made.

The Wooderchak youth was employed directly by the District, and not by the Association, he having been hired by the deputy fire warden, who in turn has been hired by the fire warden. The fire warden was employed by the Association and the District. The fire warden hires and supervises both the association and district employees. From a letter of the State Forester in the record, it appears that he did not believe the three party agreement between the State Forester, the Association and Board of Land Commissioners, was applicable, "it—does not cover slash disposal activities." The Wooderchak youth was allegedly, from his payroll record, being employed on "Slash Disposal" project.

The agreement of the Association, State Forester and Board of Land Commissioners, granted the Association, subject to Forestry Laws, the right to furnish, operate and maintain a protective system for detection, prevention, and suppression of forest fires in the District, providing for reimbursement of costs and expenses from both members of the association and from non-members who had lands in the district.

The association agreed to furnish protection of forest lands in the district. It was agreed all State Land in the district was covered by the agreement, with provision for payment of costs.

Under the forestry laws, landowners and timber operators must furnish fire protection during the closed season (June 1 to Sept. 30). If they fail to furnish such protection, the State Forester is required to do so, charging them the actual costs. I.C. §§ 38–107, 38–108. The landowner or operator may contract with the State Forester to assume this responsibility I.C. § 38–404. The State Forester is authorized by I.C. § 38–134(c) to contract with others for the purpose of fire protection of lands in the district, and he is charged with the supervision, control, and management of all fire hazards created by operators, and fire hazard reduction plans.

The District, the Wooderchak youth's direct employer, is of statutory creation; the State Forester, as authorized by I.C. § 38–105 created this district and appointed its Chief Fire Warden.

Admitting they were not the direct employers, the plaintiffs claim by reason of the facts and law, to be the Wooderchak youth's statutory employer under I.C. § 72–1010 [1] and hence that the District Court

1. "§ 72–1010. EMPLOYER—'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal repre-

**134**

is without jurisdiction to hear the negligence action, citing In re Fisk, 40 Idaho 304, 232 P. 569, and Gifford v. Nottingham, 68.Idaho 330, 193 P.2d 831.

The Fisk case was an action under the Workmen's Compensation Law where an employee of a sub-contractor was killed while hauling material. The principal, the Bonner Tie Company, and its surety, were held liable under what is now I.C. § 72–1010 [1], as a statutory employer. There this court stated: 40 Idaho 304, 307, 232 P. 569, 570;

"The company is engaged in the manufacture of ties and match stock, but a part of its business is the sale of its products. The evidence shows that the hauling to the railroad was a necessary incident to the sale of the ties and match stock. We conclude the company was the proprietor or operator of the business carried on at the place of the accident within the meaning of the statute."

The Nottingham case, supra, was an action in negligence against a claimed third party where an employee of a sub-contractor was killed and the principal contractor held not responsible as a third party; it was held the principal contractor was an employer under the provisions of I.C. § 72–1010, and the case dismissed. This court quoted from O'Boyle v. Parker-Young Co., 95 Vt. 58, 112 A. 385, 386, also quoted in In re Fisk (supra), as follows:

"* * * Under the provisions of the statute quoted, the true test is, Did the work being done pertain to the business, trade, or occupation of the defendants, carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the defendant from liability."

■ These two cases are controlling here only if the record affirmatively discloses that the relationship existing between the Association and the District was such that the Association can be considered as the "general contractor", or if the record affirmatively discloses that the Association falls within the statutory definition of "employer" set forth in I.C. § 72–1010. If the relationship existing between the District and Association is that of employer and third person, the rule of these two

sentative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured it includes his surety so far as applicable. [1917, ch. 81, § 110a, p. 252; reen. C.L. 256; 110a; C.S. § 6320; I.C.A., § 43–1806.]"

cases is not applicable. This court has repeatedly recognized that actions by an employee, his heirs or personal representatives against a third person for damages for personal injuries or death by reason of actionable negligence of a third party, are not abolished by the Workmen's Compensation Law. I.C. § 72–204[2], Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054; Gifford v. Nottingham, supra; Lake v. State, 71 Idaho 107, 227 P.2d 361; Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789; White v. Ponozzo, 77 Idaho 276, 291 P.2d 843.

Plaintiffs contend that by the very nature of the Association's business, i. e., forest protection, and the nature of the business of the members of the association, i. e., landowners of forest land, by custom, necessity and statute, they also are engaged in the business of forest protection, and all are encompassed within the statutory definition of employer and hence immune from the district court action. It is also claimed slash disposal is one of the requirements of forest protection. I.C. § 38–110

While this contention may be meritorious after all facts have been fully developed, the record here only discloses that the Wooderchak youth died as a result of a personal injury by accident arising out of and in the course of his employment by the District. The lower court complaint shows he was an employee of the district, working under the direction and control of the Fire Warden or his subordinates. What were his exact duties, the nature of his work, and other pertinent items requisite for full determination of the relationship his particular activities had to that of the Association and its members does not appear, nor is the sphere of activity of the Association and its members as compared to that of the District established. While the agreement of the Association, the State Forester and Land Commissioners is before the court, whether this agreement covers "slash disposal" is questioned by one of the members of this agreement.

---

**2.** "72–204. Liability of third persons.— When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action. [1917, ch. 81, § 7, p. 252; reen. C.L. 256:7; C.S., § 6220; I.C.A., § 43–1004.]"

These factual matters must be decided before full determination can be made as to whether the District Court has jurisdiction to hear the matter, or whether this writ of prohibition will issue. When jurisdiction of a court is dependent on a given fact, the determination of that fact, like other questions of fact, must be first made by the trial court. Pfirman v. Probate Court, 57 Idaho 304, 64 P.2d 849; Robinson v. Robinson, 70 Idaho 122, 212 P.2d 1031.

As stated in Olden v. Paxton, 27 Idaho 597, 150 P. 40, for the writ of prohibition to issue, it is necessary that two contingencies must be shown, " * * * that the tribunal, corporation, board or person is proceeding without or in excess of the jurisdiction of such tribunal, corporation, board, or person, and that there is not a plain, speedy, and adequate remedy in the ordinary course of law."

Generally it is regarded that the right to appeal is an adequate remedy at law, in the absence of exceptional circumstances. See Smith v. Young, 71 Idaho 31, 225 P.2d 466, wherein this court quoted from Willman v. District Court, 4 Idaho 11, at page 13, 35 P. 692, the following:

"The ruling of the district court may or may not be correct, but the law provides a 'plain, speedy, and adequate' means of testing that question by appeal. It never was the intention or meaning either of the common law or

the statute that writs of prohibition or habeas corpus should take the place of appeals. We are not at all in accord with the counsel's idea of what constitutes an 'adequate remedy.' The adequacy of a remedy is not to be tested by the convenience or inconvenience of the parties to a particular case. If such a rule were to obtain, the law of appeals might as well be abrogated at once. * * *"

The claim of the plaintiffs that by reason of the number of defendants, and the many witnesses that will be required, that they have no plain, speedy, or adequate remedy, we deem to be without merit, as the district court in the first instance can properly determine the matter of jurisdiction, and then, if necessary, an appeal can be perfected.

The necessary contingencies for issuance of the writ of prohibition not having been met, the writ is denied.

Costs to defendant.

KNUDSON, J., and HYATT, D. J., concur.

TAYLOR, J., with whom SMITH, C. J., concurs (dissenting).

Idaho Code § 38-105 provides that the state forester

"shall appoint one forest warden for each of the districts of the state on the recommendation of the protection

agency representing the forest land owners in each such district, and such forest wardens so appointed shall be paid by the owners of forest lands within said district, and shall in no case be paid by the state, except as hereinafter provided in sections 38–121 and 38–131, and shall at all times be responsible to and under the direction and control of the state forester and shall perform such duties at such times and places as he shall direct. * * * The forest warden so appointed may appoint deputy forest wardens within their respective districts, who shall also be paid in the same manner as the forest wardens of their districts. * *"

Idaho Code § 38–121 provides that

"the state shall bear and pay its pro rata share of the costs and expenses incurred, accruing or contracted for within each forest protective district in enforcing and carrying out the provisions of this chapter and protecting the forest lands belonging to the state against damage, devastation or destruction by fire, in the proportion which the forest lands belonging to the state within each forest protective district of the state bear to the total area of forest exclusive of all government land, within such protective district, and the state shall be considered an owner of forest land within the meaning of that term

as used in this chapter, and for the purposes thereof. * * *"

From these provisions it is clear that the state is engaged in a joint enterprise with private owners and protective agencies, or associations of private owners of forest lands, for the protection of forests within the "forest protective districts." It is also clear that the forest warden, appointed by the state forester on recommendation of the association representing the forest land owners and paid by the owners of forest lands within the district, is the employee of such owners, although acting under the direction and control of the state forester. This situation is recognized in the majority opinion as follows:

"The Wooderchak youth was employed directly by the District, and not by the Association, he having been hired by the deputy fire warden, who in turn has been hired by the fire warden. The fire warden was employed by the Association and the District. The fire warden hires and supervises both the association and district employees."

It therefore appears that the Wooderchak boy was employed by an employee of an employee of the association.

Idaho Code § 38–107 requires owners of forest lands to furnish adequate protection for such lands against fire in conformity with rules and standards established by the

**138**

state cooperative board of forestry. It further provides that in event the owner neglects or fails to furnish the required protection, the state forester shall provide the same at the expense of the owner, and the actual cost thereof shall be a lien upon the property protected.

Idaho Code § 38–108 requires everyone engaged in cutting or removing of timber to "provide for the management and reduction of the fire hazard thus created or to be created." This includes slash disposal. See I.C. § 38–110. This section also makes it a misdemeanor for any violation of its requirements.

Idaho Code § 38–110 provides that if anyone responsible for slash disposal shall fail, refuse or neglect to do so, in accordance with the requirements of § 38–108, his operation may be enjoined by the state forester, and the state forester may dispose of slash created by an operator, who fails to dispose of same, for a period of thirty days after notice to do so. The expense of the state forester in disposing of such slash, plus 20% penalty, is charged to the owner or operator responsible therefor.

Idaho Code § 38–111 provides certain precautions to be observed by anyone making disposal of slash and that violation thereof shall constitute a misdemeanor.

Idaho Code § 38–404 authorizes the state forester to assume all responsibility for slash disposal by contract with the owner or operator, at the latter's expense.

Under I.C. § 38–405 the state forester or state forest warden is authorized to enter into contracts wtih forest protective agencies for the management and reduction of fire hazards.

By the foregoing provisions of the law, the primary duty of providing forest protection is imposed upon the owner of forest lands. The fact that an operator engaged in removing timber may be someone other than the owner of the land, and that the law also imposes a duty of fire protection upon such operator, would in no wise relieve the landowner of this primary obligation. I.C. § 38–107.

The state agrees to pay its pro rata share of the cost, based upon the proportion of state forest lands to the total of such lands in the district. The law also gives the state forester and the forest wardens and their deputies supervision and control of protection activities, but the primary responsibility of the owner is continued in force and is in no way released save and except in the case of contracts under I.C. § 38–404, whereby the state forester or forest warden assumes the responsibility for hazards created by timber operations. In the case of such a contract the state forester or the forest warden would become the subcontractor of the owner or operator, and, as such, performing a duty and work imposed

by law upon the owner or operator. In such situation the owner or operator is the principal contractor and is not relieved under the workmen's compensation law from liability for injury or death resulting to an employee engaged in such protective activity.

The majority opinion refers to a letter from the state forester expressing the latter's belief that the contract between the state forester and the Clearwater Timber Protective Association does not cover slash disposal, and since the deceased was engaged in slash disposal work, he was not engaged in work being done for the association under the contract.

It is immaterial to the issue presented whether slash disposal was covered by the contract. If it was, then deceased was an employee of the plaintiff's independent contractor or subcontractor. If it was not, then he was a loaned employee of the plaintiff association. In either event his employment was within the provisions of the workmen's compensation law. As to him, the association was not, and could not be, a third party under I.C. § 72–204.

Further, it makes no difference whether the association, the state forester, or the district, was the apex of this employment structure; or which of them stood in the position of the proprietor, or which stood in the position of prime contractor, for two reasons: (1) It was the work or business of the association in which the deceased was engaged; (2) The law makes the proprietor, contractor and subcontractor all equally subject to workmen's compensation liability. I.C. § 72–811, and cases there annotated.

The state forester's letter, referred to in the majority opinion, is quoted in part in defendant's brief and attached thereto as an exhibit. From this letter it appears that the deceased was actually an employee of the association. In it the state forester says the Wooderchak boy was hired by John Curtis, deputy fire warden, who was in turn hired by A. B. Curtis, the fire warden, and the fire warden was "employed jointly by the Clearwater Association and the Clearwater Forest Protective District," and further,

"The fire warden is appointed a state fire warden, though the bulk of his salary is paid by the Association. The thing is he must be acceptable to the state forester and coordinate his work with other agencies under the general supervision of the state forester. The warden does in fact hire and supervise both association employees and state employees hired with district funds."

and, referring to the contract between the state and the association, the state forester, in the exhibit, further says,

"I really doubt, however, that it is pertinent in this case because that agreement does not cover slash dis-

posal activities. That function, or the district function is handled in the same manner as it would be handled on one of our own districts, i. e., A. B. Curtis has been appointed a state fire warden, he receives part of his pay from state funds and so I've assigned him the job of handling hazard management the same as if he were one of our regular employees. There is no agreement."

Thus, the exhibit, relied upon by defendant, conclusively establishes the fact that the deceased, though not directly employed by the association, was jointly employed by the association and the district. In any event, the association was an employer and not a third party.

The contract referred to is a tri-party agreement between the state forester, the association, and the state land board. It contains the following:

"Whereas, said Association has been continuously and successfully engaged in the protection of forest land from forest fires in substantially all the same territory as is embraced within said district for the past 39 years, and * * *

"4. The Association undertakes and agrees to furnish adequate, efficient and economical protection to the forest lands in the district covered by this agreement according to the letter, spirit and intent of the Forestry Law and of all lawful rules and regulations of the State Cooperative Board of Forestry, * * * [This does include slash disposal. I.C. §§ 38–107, 38–110]

"6. Under authority of Section 37–136 *Idaho Code Annotated* [I.C. § 38–135] the State Land Board hereby agrees with the State Forester and the Association that all state-owned forest land in said district is hereby included in the lands covered by this agreement, and the said Association assumes the same responsibility for the protection of the said state lands from forest fires as it hereby assumes as to other lands in said district, * * *"

Thus, in terms, the agreement recognizes and affirms the statutory obligation of the forest land owners (members of the association) to provide forest protection, and that the lands covered by the agreement are substantially all of the forest lands within the district; but the agreement goes further. It also obligates the association to furnish protection for state forest lands within the district, for which the state agrees to pay its pro rata share of the cost. Thus, the contract itself conclusively shows that the Wooderchak youth, hired and supervised by John Curtis, joint employee of the association and the district, was actually engaged in work which the association by law and by contract was obligated to perform, whether it directly af-

fected private lands or state lands. The conclusion is inescapable that the association was an employer of the deceased and was not a third party.

The state forester's statement that he had assigned A. B. Curtis to the job of handling hazard management, indicates that the state forester and the fire wardens assumed to employ and direct the activities of men engaged in the reduction of fire hazard for and on behalf of the association.

As to the rule that control of, or the right to control, the activities of the employee is an important determinant of the relationship of employer and employee, it is to be observed that in this case the control assumed by the fire warden is statutory. It is a control imposed upon forest land owners in pursuance of the police power of the state. But, by the same law, the state imposes upon the landowners the duty to perform the work which the wardens thus supervise. Moreover, the contract in this case recognizes not only the duty, but the right, of the forest land owners to exercise, or at least participate in, the control of such activities, by the following provision:

"and provided further, that nothing in this agreement contained shall be construed to, in any manner, limit or interfere with the rights of private owners of forest lands to furnish or provide therefore adequate and ef-

ficient protection against the starting, existence or spread of fires thereon or therefrom, as provided in Section 37–107 Idaho Code Annotated [I.C. § 38–107]."

The law defines "employer" as including "the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, *or for any other reason*, is not the direct employer of the workmen there employed." I.C. § 72–1010 (emphasis added).

In this case the forestry law, as well as the contract between the association and the state, makes the association the proprietor and operator of the business of forest protection carried on in the district. Also, by reason of the statute giving the state forester and wardens the right to direct such activities, and the latter having assumed to employ and direct men in the performance of the work of the association, the association "is not the direct employer of the workmen there employed" by the wardens. The Wooderchak boy was doing the work which both law and contract required the association to perform. Hence, the association was in no sense a stranger to the "business there carried on," but was in fact and law the proprietor and operator thereof.

The applicable rule was quoted by Justice Hyatt from O'Boyle v. Parker-Young Co., 95 Vt. 58, 112 A. 385, 386, in Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831, as follows:

" 'It was the evident intention of the Legislature to make the person or persons, company or corporation, that for practical purposes was the proprietor or operator of the business being carried on the employer, as the word is used in the statute, though not actually the employer of the workmen by reason, among others, of there being an independent contractor who was the direct employer. Under the provisions of the statute quoted, the true test is, Did the work being done pertain to the business, trade, or occupation of the defendant, carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the defendant from liability.' " 68 Idaho at 336, 337, 193 P.2d at 834.

Beedy v. Washington Water Power Co., (U.S.C.A. 9th Cir.) 238 F.2d 123, was a negligence action, brought by surviving widow and child, for wrongful death of employee killed on contact with power line belonging to defendant. The deceased was an employee of the Lewis Construction Co., which company was an independent contractor of the Washington Water Power Co., engaged in replacement of electrical conductors. The conductors were being installed across and above a 13,000 volt power line owned by the defendant company. He was killed when the line being placed came in contact with the existing line, carrying a charge to a truck with which Beedy was in contact. The accident occurred in Idaho.

It was plaintiff's contention that the power company, owner of the premises and having the work done by contract, was not an employer. The district court granted the power company's motion for summary judgment dismissing the action. The circuit court, after quoting I.C. § 72–1010, said:

" * * * The issue of control is superfluous since 'control' does not enter into the statutory definition of 'employer' under which appellee claims.

"The crucial question in the instant case is whether the Power Company was 'the proprietor or operator of the business there carried on'.

"Appellants admit that the Power Company was the owner of the land where the death of Beedy occurred. But appellants argue that the Power Company was not the proprietor or operator of the *electrical reconductoring business* being carried on, on such premises. * * *

"All that need be shown is that the employee was injured while performing work pertaining to the business, trade or occupation of the Power Company carried on by it for pecuniary gain. Fisk v. Bonner Tie Co., 40 Idaho 304, 232 P. 569; Gifford v. Nottingham, [68 Idaho 330,] 193 P.2d 831; Kirk v. United States, 9 Cir., 1956, 232 F.2d 763. The Power Company was admittedly engaged in the manufacture, transportation, delivery, and sale of electricity. And the reconductoring of its transmission lines is not work separate and distinct from the regular business carried on by the Power Company." 238 F.2d at 125, 126.

It is beyond question that an important part of the business of the owners of forest lands is the protection of the timber thereon from fire hazard. This association of such owners was engaged in that business before the forestry law was enacted. But now—in the face of the law and the contract, both of which recognize that business and enjoin it as a duty—it is contended that the owners are not engaged in that business, and that the warden, nominated for appointment and paid by them, is not employed to supervise that business, and that one employed by the warden in slash disposal is not engaged in the business carried on by the association. The contention is clearly self-confuting.

We have considered the case of Kirk v. United States (9th Cir.) 232 F.2d 763, and do not find it applicable here.

Idaho Code § 72–204 defines a third party as "some other person than the employer." The association, being an employer, manifestly cannot be a third party.

The petitioners should not be put to the expense of defending a third party tort action, when the facts before us conclusively establish that the plaintiffs in that action cannot state a claim within the jurisdiction of the district court.

The writ should be made permanent.