463 P.2d 939

Ernst G. MUENCH and Lloyd Taylor, Plaintiffs,

v.

Marlin PAINE, Archie Yamamoto, James Nafsinger, Bruce Bartlett, Leonard D. Wagers, Trustees of School District No. 139, Canyon County, Idaho, and Wilma Law, Clerk of the Board of Trustees of School District No. 139, Canyon County, Idaho, Defendants.

No. 10552.

Supreme Court of Idaho.

Jan. 16, 1970.

**474**

Weeks & Davis, Nampa, for plaintiffs.

Smith, Miller & Weston, Caldwell, for defendants.

Robert M. Robson, Atty. Gen., and James. G. Hargis, Asst. Atty. Gen., Boise, Cecil D. Hobdey, of James, Hobdey & Shaw,. Gooding, amicus curiae.

McFADDEN, Chief Justice.

Both Ernst G. Muench and Lloyd Taylor,. the plaintiffs in this original proceeding,. are residents of School District No. 139 in Canyon County, Idaho. Plaintiff Taylor has children attending school in this district, and plaintiff Muench is a real property taxpayer in the district. They instituted this action seeking a writ of prohibition to prohibit and restrain the defendant trustees of School District No. 139 of Canyon County from selling general obligation school bonds in the amount of $805,-000, after issuance of such bonds was approved in a school bond election held on May 27, 1969. An alternative writ of prohibition was issued by this court and hearing was had by this court following the filing of the defendants' return to the plaintiffs' petition.

The facts before this court are undisputed. In April 1969 the defendants as the Board of Trustees of School District No. 139 adopted a resolution calling for a bond election at which the voters would decide whether general obligation bonds in the amount of $805,000 should be issued for the purpose of acquiring school sites and

improving school facilities by building, furnishing and equipping two elementary school buildings in the district. Pursuant to I.C. § 33–404 [1] the franchise in this election was limited to qualified electors of the State and residents of the district who are taxpayers (or the spouse of a taxpayer) on real property located in the district. The plaintiffs maintain that a writ of prohibition should issue to prohibit the sale of these bonds, which were approved at the election by a vote of 723 to 297, on the ground that the election was invalid in that I.C. § 33–404 in limiting the franchise to voters in the district who were real property taxpayers is unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and in violation of Sections 2, 3 and 20 of Article 1 of the Constitution of this state.[2] In support of their position, plaintiffs cite Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.

2d 583 (1969) and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L. Ed.2d 647 (1969).

■ At the outset a question is presented whether a petition for a writ of prohibition is the proper procedure for bringing this case before the court. I.C. § 7–401 provides that a writ of prohibition can issue only to arrest "the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." Moreover, such writ is not available unless there is no plain, speedy and adequate remedy in the ordinary course of law. Clearwater Timber Protective Ass'n v. District Court, 84 Idaho 129, 369 P.2d 571 (1962). In a proper case this court has the authority to issue a writ of prohibition. Art. 5, § 9, Idaho Const.; I.C. § 1–203.

■ In Baker v. Gooding County, 25 Idaho 506, 138 P. 342 (1914), this court

---

1. I.C. § 33–404. "Qualifications of school electors.—Any person voting, or offering to vote, in any school election must be, at the time of the election:
 1. An elector within the meaning of article 6, section 2 of the Constitution of the State of Idaho;
 2. A resident of the district and, in the case of election of trustees, a resident of the same trustee zone as the candidate or candidates for school district trustees for whom he offers to vote;
 In addition to the foregoing qualifications, a school elector must be:
 a. A parent or guardian of any child or children under the age of twenty-one (21) years, when such child or children reside in the district; or
 b. A taxpayer on real or personal property situate in the district, or spouse of such taxpayer;
 and shall have executed, in writing and immediately before voting, a form of elector's oath attesting that he or she possesses the qualifications of a school elector prescribed by this section. The forms of electors' oaths shall be included in the records and returns of the board of election.
 In any school election held on a proposal to incur, increase or assume any indebtedness, or to approve a levy for any school plant facilities reserve fund, any person voting, or offering to vote in such election

shall have and possess the qualifications set forth in (1) and (2), above, and in addition thereto be a taxpayer on real property situate in the district, or the spouse of such taxpayer.
For the purpose of this section, a taxpayer on real property shall be one who pays taxes, or who is obligated as owner or contract purchaser to pay taxes, on real property."

2. Art. 1 § 2. "Political power inherent in the people.—All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature."
Art. 1, § 3. "State inseparable part of Union.—The state of Idaho is an inseparable part of the American Union, and the Constitution of the United States is the supreme law of the land."
Art. 1, § 20. "No property qualification required of electors—Exceptions.—No property qualifications shall ever be required for any person to vote or hold office except in school elections, or elections creating indebtedness, or in irrigation district elections, as to which last-named elections the legislature may restrict the voters to land owners."

held that a writ of prohibition would lie to restrain county commissioners from selling bonds when it appeared that the resolution for submitting the bond issue to the electorate had not been properly passed. Under such circumstances, this court held, the commissioners were acting in excess of their jurisdiction. The issue before the court is of such great public interest affecting the validity of existing bond issues and the rights of the several school districts of this state (as well as other taxing authorities of this state) that a decision on the issues is deemed essential in the interests of the welfare of this state. See Rich v. Williams, 81 Idaho 311, 341 P.2d 432 (1959); White v. Young, 88 Idaho 188, 397 P.2d 756 (1964). It is the conclusion of the court that the petition for a writ of prohibition is the proper procedure for challenging the validity of the particular bond election in question.

The defendants, by their return to the petition, allege that the election involved in this action was held May 27, 1969 and that the trustees of the district canvassed the results of the election the same day. They further allege that the petition herein was filed on September 14, 1969, and then contend that by reason of the provisions of S.L.1969, Ch. 208, now I.C. §.34–2001A, that the instant action was not timely brought. Some doubt is entertained by the court as to the applicability of that act to the instant case. In particular there is a question as to whether this original proceeding challenging the constitutionality of I.C. § 33–404 is within the scope of I.C. § 34–2001A. See Kramer v. Union Free School Dist., supra, and Cipriano v. City of Houma, supra. However, the defendants expressed to the court in argument that they waive this forty day time limitation as a defense to this action.

▪ This court is aware of the crises facing so many of the school districts in this state as expressed by counsel and by the amicus curiae in their respective briefs.

The school districts are under constant pressure for additional facilities by way of new buildings, new classrooms and the necessary equipment for such new construction, the need for which is created by the continual increase in the number of children reaching school age. The school districts in the state can meet the demands for such new construction only by raising the funds from the sale of bonds which have been authorized at an election following regular proceedings to present the issue. We also recognize the fact that at present the bond issues of this state that have been approved are not saleable in the open market. Because of these urgent problems facing the school districts of the state, and because of the great public interest in the result of this litigation[3] it is the conclusion of this court that the waiver by the defendants of the defense alleged in their answer that the cause is barred by the time provisions of I.C. § 34–2001A, will be accepted and redetermination of such issues reserved for a future case. Branson v. Firemen's Retirement Fund, 79 Idaho 167, 312 P.2d 1037 (1957); Rivera v. Johnston, 71 Idaho 70, 225 P.2d 858 (1951); Frisbie v. Sunshine Mining Co., 93 Idaho 169, 457 P.2d 408 (1969).

We come then to the central issue of whether the statutes of this state, and in particular I.C. § 33–404 (supra, note 1), restricting the franchise in school bond elections to real property taxpayers and their spouses is unconstitutional. The plaintiffs do not challenge that portion of I.C. § 33–404 which requires that a voter be an elector under the provisions of Idaho Const. Art. 6, § 2 and a resident of a school district. They do, however, challenge that portion of the statute requiring that a voter in a "school election" be the parent or guardian of a child under twenty-one years of age or a taxpayer on real or personal property located in the district and that portion which requires a voter in a "school election held on a proposal to incur, * * *

3. See Rich v. Williams, 81 Idaho 311, 341 P.2d 432 (1959); White v. Young, 88 Idaho 188, 397 P.2d 756 (1964).

any indebtedness" to be a taxpayer, or spouse of a taxpayer, on real property.

I.C. § 33-404 sets out qualifications for voting in two distinct types of elections: i.e. "school elections" and "school election[s] held on a proposal to incur * * * indebtedness." The parental and real or personal property taxpayer qualifications are applicable only to the former and are not involved here. However, in view of Kramer v. Union Free School Dist., supra, such qualifications are unconstitutional when applied to school elections. We are concerned solely with the validity of the real property taxpayer requirement in a "school election held on a proposal to incur * * * any indebtedness."

 It has long been settled that the United States Constitution leaves establishment of voter qualifications to the individual states. United States Constitution, Art. 1, § 2; Lassiter v. Northampton County Election Board, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959). Only when these qualifications result in an invidious discrimination are they in violation of the equal protection clause of the United States Constitution. See Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

The discrimination between property owners and nonproperty owners in elections to create indebtedness was authorized in Idaho since adoption of its constitution in 1890. Idaho Const. Art. 1, § 20; Wiggin v. City of Lewiston, 8 Idaho 527, 69 P. 286 (1902); Hartman v. Meier, 39 Idaho 261, 227 P. 25 (1924). See also Bissett v. Pioneer Irrigation Dist., 21 Idaho 98, 120 P. 461 (1912); Carville v. McBride, 45 Nev. 305, 202 P. 802 (1922). The plaintiffs, however, contend that the existing Idaho Constitutional provision, statutory law, and decisions of this court have been rendered unconstitutional by the United States Supreme Court in Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, (1969); and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

 The defendants contend that Kramer v. Union Free School Dist., supra, and Cipriano v. City of Houma, supra, are inapplicable to the present case. They seek to distinguish these cases on the ground that the former involved a "political" election in that an election of representatives on the school board was involved and that the latter involved revenue bonds rather than general obligation bonds as in the present case. It is our opinion, however, that the rationale developed in Kramer v. Union Free School Dist., supra, for determining whether a voting statute violates the Equal Protection Clause is not restricted to "political" elections, but rather is applicable to all types of elections. The court in that case stated that

> "Our exacting examination is necessitated not by the subject of the election; rather, it is required because some resident citizens are permitted to participate and some are not." at 89 S.Ct. 1891.

Also, the fact that the Kramer rationale was applied in the Cipriano decision indicates that it is not restricted to strictly "political" elections.

Neither Kramer v. Union Free School Dist., supra, nor Cipriano v. City of Houma, supra, controls the present case however. Neither case holds that discrimination between property owners and non-property owners in a voting statute is per se a violation of the Equal Protection Clause. On the contrary, the court in each case assumed that in certain elections the franchise might be limited to a particular group or class of citizens. In Kramer v. Union Free School Dist., supra, the court stated that

> "We need express no opinion as to whether the State in some circumstances might limit the exercise of the franchise to those 'primarily interested' or 'primarily affected.' Of course, we therefore do not reach the issue of whether these particular elections are of the type in which the franchise may be so limited." 89 S.Ct. at 1892.

Similarly the court stated in Cipriano v. City of Houma, supra.

"Assuming *arguendo* that a State might, in some circumstances, constitutionally limit the franchise to qualified voters who are also 'specially interested' in the election, whether the statute allegedly so limiting the franchise denies equal protection of the laws to those otherwise qualified voters who are excluded depends on [quoting from Kramer v. Union Free School Dist.] 'whether all those excluded are in fact substantially less interested or affected than those the statute includes.'" 89 S.Ct. at 1899–1900.

The court noted, however, that for a limitation in the franchise to be constitutionally approved, it must be necessary to achieve a compelling state interest and that the statute must be so tailored so that all of those excluded are substantially less interested or affected than all of those included. The distinction between Kramer v. Union Free School Dist., supra, and the present case lies in the fact that in Kramer the election was, at least in part, for the purpose of selecting representatives to serve on the school board. The court reasoned in that case that issues of general school policy were involved, issues in which every resident of the district, parent and non-parent, property owner and non-property owner alike, had a common interest. The court thus concluded that Kramer was not substantially less interested in or affected by the election than other persons allowed to vote and that the statute therefore invidiously discriminated against him in violation of the Equal Protection Clause.

Cipriano v. City of Houma, supra, is also distinguishable from the present case in that Cipriano involved the sale of revenue bonds rather than general obligation bonds. Revenue bonds differ from general obligation bonds in that the former are paid out of revenue generated by the utility which they finance; they are not financed by property tax revenue. In holding the statute restricting the franchise to real property taxpayers unconstitutional in Cipriano v. City of Houma, supra, the court was careful to note that

"Of course, the operation of the utility systems—gas, water, and electric—affects virtually every resident of the city, nonproperty owners as well as property owners. All users pay utility bills, and the rates may be affected substantially by the amount of revenue bonds outstanding. Certainly property owners are not alone in feeling the impact of bad utility service or high rates, or in reaping the benefits of good service and low rates.

"The revenue bonds are to be paid only from the operations of the utilities; they are not financed in any way by property tax revenue. Property owners, like nonproperty owners, use the utilities and pay the rates; however, the impact of the revenue bond issue on them is unconnected to their status as property taxpayers. Indeed, the benefits and burdens of the bond issue fall indiscriminately on property owner and nonproperty owner alike." 89 S.Ct. at 1900.

The key distinction between Kramer v. Union Free School Dist., supra, and Cipriano v. City of Houma, supra, and the present case, then, is that in Kramer and Cipriano the court was unable to say that the excluded class of voters was substantially less interested in or affected by the election than was the included class. The United States Supreme Court did not hold in either Kramer v. Union Free School Dist., supra, or Cipriano v. City of Houma, supra, that there was not a compelling state interest in limiting the franchise in special elections to those persons more interested in and more substantially affected by the outcome of the election than the excluded class of voters, but, at most, only held that in those cases the excluded class was as substantially affected by the election as the included class.

This court in Hartman v. Meier, 39 Idaho 261, 227 P. 25 (1924), quoted with approval from the memorandum opinion of the trial court in that case as follows:

"What, then, is the purpose of the Legislature in requiring that electors at bond elections must possess the added

qualification of being 'taxpayers of the municipality'? The mere ownership of property has long since ceased to be considered as a proper element in determining the general right of suffrage; a property owner is no more competent to judge of the suitability of a candidate for office, or the advisability of a public improvement, than any other person. Obviously the purpose of this act was to restrict the issuance of bonds to such issues as should be consented to by at least two-thirds of those who were to be primarily affected by the burden thereby imposed. Any other purpose would be unreasonable and absurd. Unless the ownership of property be considered only with reference to the burden imposed by the result of the election, it should not be considered at all. The Legislature, in adding this qualification, must have intended to require the submission of the question to those who would be peculiarly affected by the result of the election. An automobile owner who pays his registration fee is not so affected; the issuance of the bonds neither increases nor diminishes the amount of his license fee, and his automobile is not otherwise taxed. Nor is his privilege fee within the commonly accepted meaning of the word 'tax,' nor is he a 'taxpayer' in the commonly accepted meaning, as held in the decisions above mentioned."

Under the statutes of Idaho pertaining to school bonds, in Chapter 11, Title 33, Idaho Code, bonds are to be issued upon an amortization plan (I.C. § 33–1107) "and the various annual maturities of any issue of bonds shall as nearly as practicable be in such principal amounts as will, together with accruing interest on all outstanding bonds of such issue, be met and paid by an equal annual tax levy during the term for which such bonds shall be issued." I.C. § 33–801 requires the tax levies be set by the school trustees, and I.C. § 33–802 provides that any tax levied for school purposes shall be a lien on the property against which the tax is levied, including the levies

required to satisfy all maturing bonds, and bond interest. In the event of a failure of the trustees to certify such levy to the board of county commissioners, the board of county commissioners is required to set a levy sufficient to meet all accruing bond and bond interest charges for the year. I.C. § 33–1115 provides "The faith of each district is solemnly pledged for the payment of interest and redemption of principal on all bonds lawfully and validly issued."

Under I.C. § 63–101, "All property within the jurisdiction of this state, not expressly exempted, is subject to assessment and taxation." After January 1, 1970, all taxes levied upon both personal property and real estate are a lien upon such real estate (I.C. § 63–102—104). When a bond issue which is payable from the taxes levied on the property of the district is authorized by a school district, it may be for a term of as many as twenty years (I.C. § 33–1107). The total amount of bonds that may be issued by the school district is limited by a percentage of the assessed valuation.

It is apparent that the real property taxpayers have an interest in the outcome of school district bond elections substantially greater than other electors who are not also taxpayers on real property. The owners of the real property in the district are faced with the additional tax burden for the number of years authorized by the bond issue; they are subject to having a lien placed on their real property which continues year by year for the life of the bond issue. Electors, who neither own nor pay taxes on real property do not have this real and substantial interest. It is recognized that both non-real property taxpayers and real property taxpayers may have a vital interest in the outcome of any bond election within the school district by reason of the improvements that passage of such election would allow, but the improvements within the school district that are to be made also carry the responsibility for the payment for these improvements, which responsibility under the law falls primarily on the real property taxpayer of the district.

In the present case it is our opinion that nonproperty owners as a class are substantially less affected by the outcome of a general obligation bond election than are property owners. Although nonproperty owners might feel the financial impact of a bond issue indirectly through increased rentals and prices in the economy and might have children attending the public schools, the effect of a bond issue upon the real property owner is to impose a lien upon his property for payment of the bonds. I.C. § 33–802. The court in Cipriano v. City of Houma, supra, explicitly recognized the greater interest which this lien gives to the real property owner when it noted that the bonds there were not to be paid from revenue derived from real property taxation.

Since it is our opinion that neither Kramer v. Union Free School Dist., supra, nor Cipriano v. City of Houma, supra, prohibits discrimination between nonproperty owners and property owners in a general obligation bond election, we are reluctant to depart from the well settled Idaho law which has always upheld this distinction. See Wiggin v. City of Lewiston, 8 Idaho 527, 69 P. 286 (1902); Hartman v. Meier, 39 Idaho 261, 227 P. 25 (1924). Accordingly the alternative writ is quashed, writ of prohibition is denied and petition dismissed.

Costs to defendants.

DONALDSON, SHEPARD and SPEAR, JJ., concur.

McQUADE, Justice (dissenting).

I.C. § 34–2001A (S.L.1969, Chapter 208, Section 2, approved March 21, 1969) reads in pertinent part as follows:

"B. When the validity of any bond election is contested upon any of the grounds enumerated in section 34–2001 or upon any other grounds whatsoever the plaintiff or plaintiffs must, within forty (40) days after the votes are canvassed and the results thereof declared, file in the proper court a verified written complaint setting forth, in addition to the other requirements of this chapter, the following:

(1) The name of the party contesting the bond election, and that he is an elector of the public entity conducting the bond election.

(2) The proposition or propositions voted on at the election which are contested.

(3) The particular grounds of such contest.

"C. No such election contest shall be maintained and no bond election shall be set aside or held invalid unless a complaint is filed as permitted hereunder within the period prescribed in this section. As to bond elections which have been held prior to the effective date [March 21, 1969] of this act, no such contest shall be maintained wherein it is alleged that the bond election should be set aside or held on any ground enumerated in section 34–2001 or on any other ground, unless such bond election contest be filed as herein provided within forty (40) days from and after the effective date of this act."

This statute is clear and without exception. There is nothing in the section which even suggests that it does not now apply. Because the plaintiffs' petition was not filed within forty days after the election held, the votes "canvassed, and the results thereof declared," we should dismiss this action. It was not timely brought because it was barred by I.C. § 34–2001A.

The majority, understandably anxious to reach the important constitutional issue raised in this case, has held that the defendants "waived" I.C. § 34–2001A. Such waiver is not lawful. The defendants can not waive the bar of I.C. § 34–2001A. As was said by the Supreme Court of Arizona in the case of City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 1180, 102 A.L.R. 837 (1935),

"It is apparently universally held that where a right has been given to an individual not alone for his private benefit

but, as a matter of public policy, in the interest of the state, it may not be waived by any one. Day v. McAllister, 15 Gray 433, 81 Mass. 433; Clark v. Spencer, 14 Kan. 398, 19 Am.Rep. 96; State v. Carman, 63 Iowa 130, 18 N.W. 691, 50 Am. Rep. 741; Recht v. Kelly, 82 Ill. 147, 25 Am.Rep. 301; Bosler v. Rheem, 72 Pa. 54; Branch v. Tomlinson, 77 N.C. 388; Clark v. State, 142 N.Y. 101, 36 N.E. 817; Larsen v. Rice, 100 Wash. 642, 171 P. 1037; Cato v. Grendel Cotton Mills, 132 S.C. 454, 129 S.E. 203, 41 A.L.R. 439. As was said by the New York Court of Appeals, in Wright v. State, 223 N.Y. 44, 119 N.E. 83, 85, 'Such conclusion would permit an officer of the state to defeat the beneficent purpose of the statute and violate its provisions.'"

Buyers of Idaho bonds forty days after an election must be secure in the knowledge that their investment will not be jeopardized by a legal action contesting that election. By allowing these defendants to waive I.C. § 34–2001A, this Court has thrown open to challenge every bond election in the past or in the future of this state.

A valid "waiver" necessarily involves a choice to give up a right personal to the party doing the waiving. In order for a "waiver" to be permissible in this case a representative of the purchasers of the bonds, issued as a result of the election which is challenged in this action, would have to be a party. There is no such representative before us. The record provides no indication that the defendants have been authorized to make a waiver under I.C. § 34–2001A for those bondholders. The defendants' attempt to waive the provisions of the statute should be given no effect. This action was not timely brought.

I respectfully dissent from the opinion of the majority.