HOOD, Judge.
The plaintiff in this action, Dorris Handy, Jr., resides in and is a registered voter of Acadia Parish, Louisiana, but he owns no immovable property subject to ad valorem taxation in Crowley School District No, 2 of that parish. He instituted this suit against the Parish School Board of the Parish of Acadia.
Plaintiff seeks a judgment: (1) Annulling an election held in Crowley School District No. 2 of Acadia Parish on April 22, 1969, which authorized the incurring of debt and the issuance of bonds by that district; (2) decreeing to be null and void all provisions of the Louisiana constitution and statutes which restrict the right to vote in general obligation bond elections to “property taxpayers,” and enjoining defendant from giving effect to those constitutional and statutory provisions; and (3) decreeing that petitioner and all qualified electors in Crowley School District No. 2 of Acadia Parish shall be entitled to vote in all future general obligation bond elections held in that school district.
The defendant, among other pleadings, filed an exception of prescription or per-emption to that part of plaintiff’s demand which seeks to invalidate the election held on April 22, 1969, and reserving its rights under that exception, it also filed an answer. After trial, judgment was rendered by the trial court sustaining the exception of peremption filed by defendant and rejecting all other demands of plaintiff. Plaintiff has appealed.
The substantial issue presented is whether the provisions of the Louisiana constitution and statutes which limit the right to vote in general obligation bond elections to “property taxpayers” is invalid and unenforceable as being in contravention of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.
The facts are that on March 3, 1969, the defendant school board, as the governing authority of Crowley School District No. 2 of Acadia Parish, adopted a resolution calling a special election to be held in that school district to authorize the incurring of *789 debt and the issuance of general obligation bonds of said school district in the amount of $3,125,000.00. Pursuant to that resolution, the election was held on April 22, 1969, and the proceedings adopted by the defendant school board on April 24, 1969, canvassing and promulgating the results of that election, were duly published on May 9, 1969. The canvass showed that the proposal carried by a substantial majority, both in the number of votes cast and in the assessed valuation of property voted.
The election was held pursuant to the provisions of Article XIV, Section 14(a), of the Louisiana Constitution, and pursuant to the provisions of Part II and Sub-Part A of Part III, Chapter 4, Title 39, of the Louisiana Revised Statutes of 1950. LSA R.S. 39:508 and the cited section of the constitution provide, in effect, that only property taxpayers qualified to vote under the constitution and laws of this State may vote in a general obligation bond election, where the indebtedness is to be secured by and paid from taxes levied on the taxable property in the district for which the election is called. Plaintiff, being a qualified voter in the district but not a property taxpayer, was not permitted to vote in the bond election which was held on April 22, 1969.
This suit was instituted more than sixty days after the results of the election had been promulgated, and the trial judge correctly held that that part of plaintiff’s demand which seeks to annul the election held on April 22, 1969, is barred by prescription or peremption of sixty days. See La.Const. Art. XIV, Sec. 14(n); LSA R.S. 39:518; and Chambers v. Road District No. 505 of Tangipahoa Parish, 255 La. 55, 229 So.2d 698 (1969). A writ of certiorari was denied by the U.S. Supreme Court in the Chambers case on March 2, 1970, 397 U.S. 963, 90 S.Ct. 998, 25 L.Ed.2d 256.
Plaintiff concedes on this appeal that he is barred by the prescription or peremption of sixty days from attacking the election which was held on April 22, 1969, and he has formally abandoned his demand that that election be decreed to be null and void. He contends, however, that he is entitled to the other relief which he prayed for, and that the trial judge erred in rejecting those demands.
In his petition, plaintiff alleges that defendant contemplates and intends to call further elections for the issuance of general obligation bonds under the above mentioned constitutional and statutory provisions permitting only property taxpayers to vote at said elections, and he seeks to enjoin defendant from calling any further elections under those state constitutional and statutory provisions, on the ground that such provisions discriminate against him and others similarly situated, depriving them of their rights under the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution. In attacking the constitutionality or validity of the Louisiana constitutional and statutory provisions, plaintiff relies largely on the recent decisions of the United States Supreme Court in the cases of Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed. 583 (1969); and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).
The trial judge rejected the argument made by plaintiff. For reasons assigned in an excellent and scholarly opinion, he concluded that the provisions of the Louisiana constitution and statutes which limit the voting franchise in general obligation bond elections to property taxpayers do not violate the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution. He thus rendered judgment denying the relief sought by plaintiff and dismissing this suit. We ultimately conclude that the judgment of the district court is correct.
Article XIV, Section 14(a), of the Louisiana constitution authorizes school *790 districts to incur debt and to issue negotiable bonds, “ * * * when authorized by a vote of a majority in number and amount, of the property tax-payers qualified to vote under the Constitution and laws of this State.” It also provides that when such a debt is incurred the governing authority of the district “ * * * shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest annually or semi-annually and the principal falling due each year.”
LSA R.S. 39:508 provides that “Only property taxpayers qualified as electors under the constitution and laws of this state are entitled to vote in any election held under the provisions of this Part.” And, LSA R.S. 39:569 provides that the governing body of any subdivision issuing bonds under that Part of the Revised Statutes “ * * * shall impose and collect annually in excess of all other taxes, a tax on all the property subject to taxation by the subdivision sufficient in amount to pay the interest annually or semi-annually, and the principal falling due each year.”
The Louisiana constitution and statutes clearly provide, therefore, that the right to vote in general obligation bond elections is limited to “property taxpayers,” but they also provide with equal clarity that the indebtedness incurred by virtue of each such election must be paid by taxes levied on property in the subdivision which is subject to taxation. In essence, the constitution and statutes simply provide that the electors who must pay the indebtedness are the only ones who are entitled to vote on the question of whether such a debt shall be incurred.
In Harper v. Virginia State Board of Elections, supra, relied on by plaintiff, the United States Supreme Court held that the Virginia poll tax was unconstitutional, as being in violation of the Equal Protection Clause of the Fourteenth Amendment. No issue was presented there as to whether the franchised voters had a direct interest in or were primarily affected by any particular election, or whether the poll tax law was necessary because of a “compelling state interest” to limit the right to vote to a particular class of voters. The Harper case thus has no application here.
In Kramer v. Union Free School District, supra, a New York statute which excluded certain electors from the right to vote in some school district elections was held to be unconstitutional as violating the Equal Protection Clause of the Fourteenth Amendment. The New York statute provided that to be eligible to vote at any annual district meeting for “school district officers, and upon all other matters which may be brought before such meetings,” an otherwise qualified district resident must be: (1) The owner or lessee of taxable real property located in the district; (2) the spouse of one who owns or leases qualifying property; or (3) the parent or guardian of a child enrolled for a specified time during the preceding year in a local school district. The evidence not only failed to show that the franchised voters had a “primary interest” in school board matters, but on the contrary, it showed that many persons who were authorized to vote had only a remote and indirect interest in school affairs, while many excluded electors had a distinct and direct interest in school meeting decisions. The court thus held that there was no “compelling state interest” which could justify denying the franchise to the appellant and to members of his class.
In the Kramer case, the Supreme Court declined to express an opinion as to whether the state under some circumstances may limit the franchise of voting to those “primarily interested” or to those “primarily affected” by the matter voted on in the election. In that connection, however, the court said:
“We need express no opinion as to whether the State in some circumstances might limit the exercise of the franchise to those ‘primarily interested’ or ‘primarily affected.'

*791

“ * * * Section 2012 does not meet the exacting standard of precision we require of statutes which selectively distribute the franchise. The classifications in § 2012 permit inclusion of many persons who have, at best, a remote and indirect interest, in school affairs and, on the other hand, exclude others who have a distinct and direct interest in the school meeting decisions.

“ * * * The issue is whether the § 2012 requirements do in fact sufficiently further a compelling state interest to justify denying the franchise to appellant and members of his class. The requirements of § 2012 are not sufficiently tailored to limiting the franchise to those ‘primarily interested’ in school affairs to justify the denial of the franchise to appellant and members of his class.” (Emphasis added).
In Cipriano v. City of Houma, supra, the Supreme Court held to be unconstitutional the provisions of Louisiana statutes which give only “property taxpayers” the right to vote in elections called to approve the issuance of "revenue bonds by a municipal utility.” The decision in that case was based on a finding that the property taxpayers were not primarily obligated to pay the indebtedness evidenced by the revenue bonds, but instead, that the burden of paying the bond issue fell indiscriminately on property owner and nonproperty owner alike. The court concluded that the challenged statute contained a classification which excluded otherwise qualified voters who were “substantially affected” and “directly interested” in the matter voted upon, and that there thus was no “rational basis” for limiting the franchise to the “property taxpayers.” The court said:
“ * * * The revenue bonds are to be paid only from the operations of the utilities; they are not financed in any way by property tax revenue. Property owners, like nonproperty owners, use the utilities and pay the rates; however, the impact of the revenue bond issue on them is unconnected to their status as property taxpayers. Indeed, the benefits and burdens of the bond issue fall indiscriminately on property owner and non-property owner alike.

■ “ * * * The challenged statute contains a classification which excludes otherwise qualified voters who are as substantially affected and directly interested in the matter voted upon as are those who are permitted to vote.”
In the Kramer and Cipriano cases, therefore, the Supreme Court recognized that under some circumstances a state may grant the right to vote in limited purpose elections to electors who are “primarily affected” or “primarily interested” in the subject matter, and that it may deny that right to other electors who are substantially less interested or affected than those the statute includes. The test to be applied in determining the constitutionality of such provisions is to inquire as to whether the exclusions from the voting franchise “are necessary to promote a compelling state interest.”
Issues almost identical to those presented here were considered by the Supreme Court of Oklahoma in Settle v. City of Muskogee, 462 P.2d 642 (Oklahoma, 1969), and by the Supreme Court of Idaho in Muench v. Paine, 93 Idaho 473, 463 P.2d 939 (1970). In each of those cases the courts held that the state statutes restricting the right to vote in bond elections to “property taxpayers” was valid, and that such statutory provisions did not violate the standards set out in the Fourteenth Amendment of the Federal Constitution or in the Kramer and Cipriano cases.
We quote, with approval, from Settle v. City of Muskogee, supra, the following:
“We construe Kramer and Cipriano to hold that a statute or a state constitutional provision having a voter classifi *792 cation restricting the right to vote to one class, thus denying it to another class, is not violative of the equal protection clause, (1) where the exclusions are necessary to promote a compelling state interest, and (2) where those excluded are in fact substantially less interested or affected than those included. * * *

“ * * * We emphasize that this is an election under a constitutional provision authorizing an indebtedness in excess of the maximum amount the general electorate may approve. It is to be satisfied by a tax paid by property taxpayers who are primarily interested or affected by reason of an increase in the city’s debt and their taxes. Plaintiff does not pay . any tax. His resulting detriment or expense, if any, arising from the higher tax level, is a proportionate part of the relatively small additional expense spread across the population of the city. The extent to which plaintiff is interested or affected is indirect and remote.”
The Idaho Supreme Court in Muench v. Paine, supra, said:
“It is apparent that the real property taxpayers have an interest in the outcome of school district bond elections substantially greater than other electors who are not also taxpayers on real property. The owners of the real property in the district are faced with the additional tax burden for the number of years authorized by the bond issue; they are subject to having a lien placed on their real property which continues year by year for the life of the bond issue. Electors, who neither own nor pay taxes on- real property do not have this real and substantial interest. * * *
“In the present case it is our opinion that nonproperty owners as a class are substantially less affected by the outcome of a general obligation bond election than are property owners. Although nonproperty owners might feel the financial impact of a bond issue indirectly through increased rentals and prices in the economy and might have children attending the public schools, the effect of a bond issue upon the real property owner is to impose a lien upon his property for payment of the bonds. I.C. § 33-802. The court in Cipriano v. City of Houma, supra, explicitly recognized the greater interest which this lien gives to the real property owner when it noted that the bonds there were not to be paid from revenue derived from real property taxation.”
We believe that when a bond election is held in a political subdivision, and the indebtedness is to be paid from the proceeds of taxes levied on property in the subdivision, then the property taxpayers in that subdivision have an interest in the outcome of the election which is substantially greater than other electors who are not property taxpayers. Under those circumstances we think there is a compelling state interest in limiting the right to vote in such elections to the property taxpayers.
Plaintiff argues further that in Louisiana a homeowner is entitled to an exemption of either $2,000.00 or $5,000.00 of the assessed value of his home, depending on whether he is a veteran. La.Const. Art. 10, Section 4. The state reimburses school boards and other political subdivisions from the Property Tax Relief Fund for the loss of taxes represented by the total assessed value of the homestead exemption. See LSA R.S. 39:253. The Property Tax Relief Fund is made up of revenues received from several taxes, including Alcoholic Beverage Taxes and State Income Taxes. The record shows that a substantial sum of money was collected from these taxes and was put into the Property Tax Relief Fund during the 1967-68 fiscal year. Plaintiff argues, therefore, that he and all other taxpayers contribute to the payment of the general obligation bonds, even though they are not property taxpayers, and that they then are being deprived of their rights under the Fourteenth Amendment by the statutory provisions which *793 deny them the right to vote in bond elections.
This is a forceful argument. We have decided, however, that the fact that plaintiff, and other electors who are not property taxpayers, contribute to the Property Tax Relief Fund does not give them such a “primary interest” in all general obligation bond elections that they have constitutional rights to vote in all such elections.
It is not likely that the rate of taxes which plaintiff now pays will be increased or reduced, depending on the outcome of a general obligation bond election. The property taxpayer, however, is in an entirely different position. His taxes necessarily must increase if the election carries.
It is true that the incurring of debt and the issuing of bonds by a political subdivision may eventually increase or in some way affect the taxes which are paid by nonproperty owning electors, but that is an indirect or remote result of the election.
Our understanding of the Kramer and the Cipriano decisions is that an elector otherwise qualified to vote may legally and constitutionally be excluded from voting in a special purpose election if he is only remotely or indirectly affected by the election, while the franchised voter is directly interested and affected by it. In such a case there ordinarily would be a compelling state interest, sufficient to satisfy the requirements of the Fourteenth Amendment, for a .distinction to be made in voting rights.
In the instant suit, the property taxpayers who are empowered to vote in general obligation bond elections are “primarily interested” and are “primarily affected” by such elections, because they are the ones who are primarily obligated to pay the indebtedness. The nonproperty owners who are not permitted to vote, including plaintiff in this suit, have only a remote and indirect interest in the outcome of the election. It would be oppressive to the property owner, we think, to permit those who do not pay property taxes to have a vote in determining whether to incur a public debt which must be paid solely by the property taxpayer. Certainly the owners of property who by law are required to pay the indebtedness have a “primary interest,” as opposed to a “remote” or “indirect” interest, in the outcome of such an election. The provisions of the Louisiana constitution and statutes are designed to prevent that unfairness, and we think there is a “compelling state interest” which justifies those constitutional and statutory provisions.
We are aware of the fact that the United States District Court for the Eastern District of Louisiana, sitting as a three judge court, recently decided the case of Stewart v. Parish School Board of the Parish of St. Charles, 310 F.Supp. 1172 (1970), which case involved the same issues which are presented here. Also, another case involving similar issues was decided a few weeks earlier by the United States District Court for the District of Arizona. See Kalodziejski v. City of Phoenix, Arizona, et al. (No. Civ. 69-335 Phx., November 25, 1969). In each of those cases the court determined that state statutes restricting the right to vote in bond elections to property taxpayers were invalid, being in violation of the Fourteenth Amendment. We think the Kalodziejski case is distinguishable from the instant suit, but we have been unable to distinguish the issues presented here from those determined in the Stewart case. The forceful and logical reasons assigned by the court in each case, and particularly in the Stewart suit, have given us some concern. With great respect, however, we must disagree with the conclusions reached by those distinguished courts insofar as they may be in conflict with the conclusions which we reach here.
Our conclusion is that the provisions of the Louisiana constitution and statutes which restrict the right to vote in general obligation bond elections to property taxpayers does not violate the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution, and that there *794 was no error in the judgment of the trial court rejecting plaintiff’s demands.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
MILLER, J., concurs, assigning written reasons.