976 P.2d 913

IDAHO SCHOOLS FOR EQUAL EDU-CATIONAL OPPORTUNITY, Moscow School District # 281, Lapwai School District # 341, Mullan School District # 392, Potlatch School District # 285, Whitepine Joint School District # 286, Kendrick Joint School District # 283, Cascade School District # 422, St. Maries Joint School District # 41, Orofino Joint School District # 171, Culdesac Joint School District # 342, Genesee Joint School District # 282, Highland–Craigmont Joint District # 305, American Falls School District # 381, Rockland School District # 382, Valley School District # 262, Challis Joint School District # 181, Horseshoe Bend School District # 73, Richfield School District # 316, Boundary County District # 101, Kamiah Joint District # 304, Wallace School District # 393, Nez Perce District # 302, Cottonwood District # 242, Midvale School District # 433, Post Falls School District # 272 and Bonner County School District # 82, Plaintiffs–Counterdefendants–Appellants–Cross Respondents,

and

Brian Silflow and Ganel Silflow, by and through their parents, Dale and Patti Silflow, husband and wife, Donald Paul Crea, by and through his father, Gary Crea, Andy Cook, by and through his father, Larry Prally, Tavia Gilbert, by and through her Parents, Terry and Carolyn Gilbert, Gregory Lamm, by and through his mother, Kathy Lamm, Sara Kae Gomez, by and through her parents, Kathleen and Jose Gomez, Dietrich Stella and Jennifer Stella, by and through their parents, Charles and Rebecca Stella, Gregory Daniels, by and through his mother, Nancy Daniels, Gina M. Decker, by and through her parents, Gene and Linda Decker, Jennifer A. Alder, by and through her parents, Max and Judy Alder, Angela F. Gerrard, by and through her parents, Roger and Rhoda Gerrard, Catherine A. Sporleder, by and through her mother, Joanne Sporleder, Morgan Rounds and Seth Rounds, by and through their parents, Ivan Rounds and Brenda Rounds, Kelli Longeteig, by and through her parents, Willfred Longeteig and Beverly Longeteig, Don Hoffer, by and through his mother, Kit Hoffer, Sarah Malloy, by and through her mother, Susie Malloy, Kory Turnbow, by and through his mother, Donagene Turnbow, Shawna Olsen, Shannon Olsen and Ryan Olsen, by and through their mother, Teresa Olsen, Krista Anne Goetz, by and through her father, Allan J. Goetz, Chad Knee, by and through his parents, Kelly and Karen Knee, on behalf of themselves and all other school people of the State of Idaho similarly situated, Plaintiffs–Appellants–Cross Respondents,

v.

The STATE of Idaho, Defendant-Counterclaimant-Respondent-Cross Appellant.

No. 24445.

Supreme Court of Idaho,
Boise, November 1998 Term.

Dec. 30, 1998.

Rehearing Denied May 17, 1999.

Huntley & Olsen, Boise, for appellants. Robert C. Huntley, Jr. argued.

Hon. Alan G. Lance, Attorney General; Michael S. Gilmore, Deputy Attorney General, Boise, for respondent. Michael S. Gilmore argued.

JOHNSON, Justice

This is a school funding case. We conclude that pursuant to Article IX, § 1 of the Idaho Constitution, which requires the Legislature to "establish and maintain a ... thorough system of public, free common schools," the Legislature must provide a means for school districts to fund facilities that provide a safe environment conducive to learning. Therefore, we vacate the summary judgment dismissing this claim and remand the case to the trial court for further proceedings as directed by this opinion. We uphold the summary judgment dismissing the claims for a declaration that a thorough system of public, free common schools requires (1) equalization of funding for capital expenditures and (2) not submitting special override levy elections to the voters for special facilities levies. We also uphold the trial court's denial of the State's request to file a third-party complaint and to dismiss the claims of students whose school districts are not plaintiffs.

I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Idaho Schools for Equal Educational Opportunity (ISEEO), an unincorporated association of Idaho school district superintendents, together with various school districts and various public school students represented by their parents (collectively referred to

as Plaintiffs), sued the State of Idaho (the State) alleging that the State's school funding system does not meet the requirement of Article IX, § 1 of the Idaho Constitution. In an earlier appeal, this Court concluded that Plaintiffs stated a cause of action under the thoroughness provisions of Article IX, § 1 but that they were foreclosed from pursuing their claims for uniformity and equal protection by a prior decision of this Court. *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993) (*ISEEO I*).

On remand, which the Court ordered in *ISEEO I*, the State requested summary judgment based on mootness because of the Legislature's enactment of section 33–1612 of the Idaho Code (I.C.), which defined thoroughness. Plaintiffs requested permission to amend their complaint. The trial court denied Plaintiffs permission to amend and granted summary judgment dismissing the case because of mootness. On appeal, the Court concluded that the trial court should not have granted summary judgment because the suit was not moot despite intervening legislative and agency action defining thoroughness, ruling that the constitutional requirement of providing a thorough education remained. *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 912 P.2d 644 (1996) (*ISEEO II* ). The Court also concluded that the trial court exceeded the bounds of proper discretion in not permitting Plaintiffs to amend their complaint.

On remand, which the Court ordered in *ISEEO II*, Plaintiffs amended their complaint, continuing the allegation that the Legislature had failed to comply with the thoroughness requirement of Article IX, § 1. The State requested that the trial court: (1) declare the applicability of I.C. § 33–1612 and the regulations adopted by the State Board of Education (the State Board) under that statute to the issues in the case; (2) dismiss certain plaintiffs pursuant to Idaho Rule of Civil Procedure (I.R.C.P.) 12(b)(7) for failure to join an indispensable party; and (3) allow the State to file a third-party complaint. The trial court denied the motions to dismiss and to file a third-party complaint, and initially denied the State's request to declare the applicability of I.C. § 33–1612 and the State Board rules and regulations. On reconsideration, the trial court established the following procedure for determining the meaning of thoroughness under which the case would be tried:

One of the claims asserted by the Plaintiffs is that the Defendant has not provided sufficient money for the school districts to provide a thorough education. In order to determine whether sufficient money has been provided, the Court must decide what is necessary to constitute a thorough education. If that definition is provided by statute or rule, it will apply unless such definition is shown not to be consistent with the constitution. The legislature could always require more than the constitution requires. It cannot require less.

The orderly resolution of the Plaintiffs' claims requires that the issue of the standard for a thorough education be resolved before the trial on the issue of whether the State is providing sufficient money to provide a thorough education. In its brief in opposition to the motion to reconsider, the Plaintiffs stated that they "have not brought an action to declare any of the statutes or regulations [defining a thorough education] unconstitutional." If the Plaintiffs do not challenge the definition of thorough education provided by Idaho Code § 33–1612 and the regulations adopted pursuant to that statute, then such definition will apply to this case.

. . . .

IT IS FURTHER ORDERED that the Plaintiffs will have 28 days after the conclusion of the present legislative session within which to file with the Court and serve on opposing counsel a written document stating that they intend to challenge the constitutionality of Idaho Code § 33–1612 and/or the regulations adopted pursuant to that statute. If the Plaintiffs do not do so, then Idaho Code § 33–1612 and the regulations adopted pursuant to it will be the definition of "thorough education" applied in this action. If they timely file written notice, then the issue of the consti-

tutionality of the statute or regulations will be litigated.

The Legislature adjourned on March 19, 1997, and twenty-eight days from that date was April 16, 1997. On April 18, Plaintiffs filed a "Notice of Possible Challenge to Constitutionality ... and Relief from Filing Deadline of April 16th" but did not specify what challenges they desired to make.

The trial court ordered Plaintiffs to file a list of the specific issues they were going to raise concerning the constitutionality of the legislative definition of thoroughness contained in I.C. § 33–1612 and the rules and regulations the State Board adopted pursuant to that statute. Initially, Plaintiffs identified five issues that "Plaintiffs expect to try," including a challenge to the constitutionality of I.C. § 33–1612, an allegation that the State was "failing in its constitutional duty to provide funding at a level adequate to provide a 'thorough' education for Idaho's public school students," and three allegations regarding inadequate funding of capital facilities. Following a status conference, Plaintiffs moved to re-identify the issues "which will be before the Court in the November trial." The re-identification of issues stated the following as the issues submitted by Plaintiffs:

(1) Whether there is a constitutional requirement that the Legislature provide capital facilities and capital assets funding for the conduct of education in Idaho, and if so, what is the responsibility of the Legislature to provide funding for the outstanding unmet needs (as evidenced in part by the shortfall listed in the Facilities Needs Assessment Study of 1992 of approximately $700,000,000 and now believed by the Plaintiffs to approach the sum of $1 Billion Dollars), together with legislative funding of future capital facilities/assets.

(2) Whether the present system of funding capital expenditures is unconstitutional in the sense that, as ruled by the Arizona Supreme Court in the case of *Roosevelt Elementary School v. Bishop*, [179 Ariz. 233] 877 P.2d 806 (Ariz. 1994), there is no equalization or funding through the foundation formula for capital expenditure needs, the foundation formula providing

funding and equalization only for maintenance and operation needs of the schools.

(3) Whether, similar to the decision of the Washington Supreme Court in *Seattle School District No. 1 v. State*, [90 Wash.2d 476] 585 P.2d 71 (Wash.1978), the Idaho Constitution is being violated to the extent that the school districts are required to submit special override levy elections to the voters (i) in order to fund basic maintenance and operation needs, (ii) and for special facilities levies.

The State requested that the trial court grant the following: (1) summary judgment on Plaintiffs' re-identified issues on the basis that the Legislature is not obligated to fund local school districts' capital facilities from state sources and (2) a ruling that the 1993 Statewide School Facilities Needs Assessment is not evidence of the failure of the school districts' facilities to meet standards for school facilities required by the Article IX, § 1, I.C. § 33–1612, IDAPA 08.02.02.130, or any other statutory or regulatory standard. Plaintiffs submitted affidavits in opposition to the State's requests. Some of these affidavits asserted that there were unsafe conditions in six of the school districts which are plaintiffs in this case and that these districts do not have adequate funds to cure these unsafe conditions. An affidavit of an expert submitted by Plaintiffs asserted that twenty percent of the school districts in the state "are in violation of life-safety codes." This affidavit did not identify which districts or whether the districts had sufficient funds to cure these violations. The trial court granted the State summary judgment dismissing Plaintiffs' claims.

Plaintiffs requested that the trial court alter or amend the summary judgment and allow Plaintiffs to amend their issues to add the new language in bold print, as follows:

(1) Whether there is a constitutional requirement that the Legislature provide capital facilities and capital assets funding for the conduct of education in Idaho, and if so, what is the responsibility of the Legislature to provide funding for the outstanding unmet needs (as evidenced in part by the shortfall listed in the Facilities Needs Assessment Study of 1992 of ap-

proximately $700,000,000 and now believed by the Plaintiffs to approach the sum of $1 Billion Dollars), together with legislative funding of future capital facilities/assets. **The call for the Legislature to "provide" funding does not specify and is not limited to a single source such as State General Fund Revenues. Rather, the Legislature's obligation is to provide funding through any mechanism available to it, including possibly, for example, the relaxing of restrictions on local levies and bonds. Thus, by this issue Plaintiffs are not now requesting that the Court order the Legislature to provide the funding from any particular source, but are asking the Court to require the Legislature to provide the Court with a plan to be implemented to carry out the Legislature's constitutional duty.**

(2) Whether the present system of funding capital expenditures is unconstitutional in the sense that, as ruled by the Arizona Supreme Court in the case of *Roosevelt Elementary School v. Bishop*, [179 Ariz. 233] 877 P.2d 806 (Ariz.1994), there is no equalization or funding through the foundation formula for capital expenditure needs, the foundation formula providing funding and equalization only for maintenance and operation needs of the schools.

(3) Whether, similar to the decision of the Washington Supreme Court in *Seattle School District No. 1 v. State*, [90 Wash.2d 476] 585 P.2d 71 (Wash.1978), the Idaho Constitution is being violated to the extent that the school districts are required to submit special override levy elections to the voters (i) in order to fund basic maintenance and operation needs, (ii) and for special facilities levies. **By this issue the Plaintiffs are not requesting the Court to declare the levies themselves void and unconstitutional, but rather are asking the Court to rule that the constitutional mandate is not being met when the levies are uncertain due to a requirement they be submitted to a vote of the taxpayers.**

The trial court allowed Plaintiffs to amend their re-identification of issues in this fashion but denied the request to alter or amend the summary judgment.

Plaintiffs appealed from the trial court's summary judgment dismissing their claims and from the denial of their motion to alter or amend. The State cross-appealed from the trial court's failure to dismiss some plaintiffs for failure to join indispensable parties and from the trial court's failure to allow the State to file a third-party complaint.

## II.

**THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT DISMISSING THE CLAIM THAT THE LEGISLATURE HAS NOT PROVIDED A MEANS TO FUND FACILITIES THAT OFFER A SAFE ENVIRONMENT THAT IS CONDUCIVE TO LEARNING.**

■ Plaintiffs assert that the trial court should not have granted summary judgment dismissing their claims. We agree with regard to Plaintiffs' claim that the Legislature has the duty to provide a means for school districts to fund facilities that offer a safe environment conducive to learning.

In *Orthman v. Idaho Power Co.*, 130 Idaho 597, 944 P.2d 1360 (1997), this Court stated its standard of review of summary judgment decisions:

> When faced with an appeal from a lower court's grant of a summary judgment motion, this Court reviews the lower court's ruling by employing the same standard properly applied by the lower court when originally ruling on the motion. Summary judgment shall be rendered "if the pleadings, depositions, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. However, if the evidence

reveals no disputed issues of material fact, then summary judgment should be granted.

The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. In order to meet its burden, *the moving party must challenge in its motion and establish through evidence the absence of any genuine issue of material fact on an element of the nonmoving party's case. If the moving party fails to challenge an element or fails to present evidence establishing the absence of a genuine issue of material fact on that element, the burden does not shift to the nonmoving party, and the non-moving party is not required to respond with supporting evidence.*

*Id.* at 600, 944 P.2d at 1363, quoting from *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996) (emphasis added) (citations omitted).

Plaintiffs first contend that the thoroughness requirement of Article IX, § 1 requires that the Legislature set up a system by which school facilities are provided, either from state or local funds. It is important to note that the State did not provide any evidence in support of its request for summary judgment but relied on its legal analysis that, as a matter of law, it was entitled to summary judgment.

We first address the State's contention that Plaintiffs abandoned their thoroughness claim as it relates to the Legislature's duty pursuant to Article IX, § 1. The first contention the State presented to the trial court in support of its request for summary judgment was summarized by the State, as follows:

There is no Idaho constitutional requirement that the Legislature provide capital facilities or capital assets funding to local school districts to assist local school districts in the provision of public, free common schools in a general, uniform and thorough system.

In its memorandum in opposition to the State's request for summary judgment, Plaintiffs contended, as follows:

Given the language of its own statutes and rules, the State cannot dispute that

the Idaho Legislature has a constitutional obligation to establish a system which provides funding to build and maintain facilities which provide a safe environment for school children and which meet the physical requirements set forth in the State Board of Education Rules.

In reply, the State argued, as follows:

Plaintiffs' Re–Identification of Issues stripped the "thoroughness" issues and the issues of fact from their case, leaving only issues of law under the "uniformity" provision of the Education Article.

In its decision granting summary judgment, the trial court began its analysis by stating, as follows:

The first issue presented by the Plaintiffs is whether the Idaho Constitution requires the legislature to provide funds for the construction and maintenance of capital facilities for public schools. This is an issue of law.

In granting summary judgment on this issue, the trial court concluded, as follows:

Prior to the adoption of the Idaho Constitution, school houses were funded by the electors of each school district voting to tax themselves. . . . The framers of the Idaho Constitution did not seek to change that manner of funding school houses. If the people of the State of Idaho want to change the Idaho Constitution to require the State to fund school houses, they can do so. They can likewise elect legislators who would vote to appropriate funds to construct or repair school houses. Absent a provision in the Constitution requiring that result, however, it is not the province of the Court to require the State to provide such funding.

In its decision denying Plaintiffs' request to alter or amend the summary judgment, the trial court clarified this issue, as follows:

When framing the issue as whether or not the Idaho Constitution requires the Legislature to *provide* capital funding, the Court was not considering only providing such funding by appropriate State revenues. If the Constitution obligates the Legislature to provide funds for school facilities, the

Legislature can provide those funds directly by appropriating State revenues or indirectly such as by granting taxing authority to some subdivision of the State (e.g. school districts). If the Constitution does not obligate the Legislature to provide funds for school facilities, however, the Legislature is not required to provide such funds either directly by allocating State revenues or indirectly by granting taxing authority to a subdivision of the State.

The trial court concluded its analysis of this issue in denying amendment of the summary judgment, as follows:

This Court's conclusion, based upon the intent of the framers of our Constitution, is that Article IX, § 1, does not require the Legislature to provide funding for school facilities. It does not require the Legislature to provide such funding directly by appropriating tax dollars, nor does it require the Legislature to provide such funds indirectly by some other means.

At the hearing on Plaintiffs' request to amend the summary judgment, the trial court permitted Plaintiffs to amend their re-identification of issues to include the following:

The call for the Legislature to "provide" funding does not specify and is not limited to a single source such as State General Fund Revenues. Rather, the Legislature's obligation is to provide funding through any mechanism available to it, including possibly for example, the relaxing of restrictions on local levies and bonds. Thus, by this issue Plaintiffs are not now requesting that the Court order the Legislature to provide the funding from any particular source, but are asking the Court to require the Legislature to provide the Court with a plan to be implemented to carry out the Legislature's constitutional duty.

None of the foregoing indicates to us that the trial court construed Plaintiffs' re-identification of issues as removing the thoroughness challenge, as argued by the State. In any event, we do not believe this would be a correct characterization. We conclude that Plaintiffs' thoroughness claim continues to be part of the issues in this case.

In *ISEEO I*, the Court discussed thoroughness, as follows:

Balancing our constitutional duty to define the meaning of the thoroughness requirement of art. 9 § 1 with the political difficulties of that task has been made simpler for this Court because the executive branch of the government has already promulgated educational standards pursuant to the legislature's directive in I.C. § 33–118. *See State Board of Education Rules and Regulations for Public School K–12*, IDAPA 08.02. We have examined those standards carefully and now hold that, under art. 9, § 1, *the requirements for school facilities*, instructional programs and textbooks, and transportation systems as contained in those regulations presently in effect, *are consistent with our view of thoroughness*.

*ISEEO I*, 123 Idaho at 583, 850 P.2d at 734 (emphasis added). The State Board's rules and regulations (the prior rules) to which we referred in *ISEEO I* were sunsetted by the Legislature on April 1, 1997, and new State Board rules and regulations (the new rules) were promulgated. In *ISEEO I*, this Court specifically noted that "[o]ur holding of the consistency of the IDAPA standards, with a definition of thoroughness is limited to the standards as they exist today. We express no opinion as to whether the IDAPA standards would be consistent with that definition if the Board of Education were to amend them." 123 Idaho at 584 n. 2, 850 P.2d at 735 n.2.

The statute defining thoroughness enacted by the Legislature after *ISEEO I* provides that a thorough system of public schools is one in which "[a] safe environment conducive to learning is provided" and requires the State Board to "adopt rules . . . to establish a thorough system of public schools. . . ." I.C. § 33–1612. The new rules the State Board adopted pursuant to I.C. § 33–1612 deal explicitly with school facilities. IDAPA 08.02.02.130. They state that facilities are "a critical factor in carrying out educational programs" and that "[t]he focus of concern in each school facility is the provision of a variety of instructional activities and programs,

with the health and safety of all persons essential." IDAPA 08.02.02.130.

In the same spirit with which we accepted the prior rules as consistent with our view of thoroughness, we conclude that the new rules and I.C. § 33–1612 are consistent with our view of thoroughness with respect to facilities. Even without these expressions from the Legislature and the State Board, however, we conclude that a safe environment conducive to learning is inherently a part of a thorough system of public, free common schools that Article IX, § 1 of our state constitution requires the Legislature to establish and maintain. Certainly, the constitutional obligation of the Legislature cannot be read to allow a system of schools that do not provide a safe environment conducive to learning.

Because the State did not present any evidence in support of its request for summary judgment that asserted that the existing school facilities provide a safe environment conducive to learning, it is not necessary for us to examine the evidence presented by Plaintiffs on this question. The State did not attempt to eliminate genuine issues of material fact on this claim. Therefore, Plaintiffs were not required to respond to create factual issues. We conclude that the trial court should not have granted summary judgment dismissing this claim.

## III.

## THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT DISMISSING PLAINTIFFS' OTHER CLAIMS.

■ Plaintiffs assert that the trial court should not have granted summary judgment dismissing their other claims. We disagree.

Plaintiffs contend that the present system of funding capital expenditures is unconstitutional in the sense that, as ruled by the Arizona Supreme Court in the case of *Roosevelt Elementary School v. Bishop*, 179 Ariz. 233, 877 P.2d 806 (1994), there is no equalization of funding through the foundation formula for capital expenditure needs, the foundation formula providing funding and equalization only for maintenance and operation needs of the schools.

The *Roosevelt* case involved a challenge to Arizona's school financing system, and under a "general and uniform" education article of the Arizona Constitution, the Arizona Supreme Court concluded that the state was required to make capital expenditures between districts substantially equal. *Roosevelt*, 877 P.2d at 814–16. In *Thompson v. Engelking*, 96 Idaho 793, 805, 537 P.2d 635, 647 (1975), this Court concluded that the uniformity requirement of Article IX, § 1 applies only to uniformity in curriculum, not uniformity in funding. This Court adhered to this conclusion in *ISEEO I*. 123 Idaho at 579–80, 850 P.2d at 740–41 (stating that "the uniformity requirement in the education clause requires only uniformity in curriculum, not uniformity in funding"). This analysis is applicable to the means the Legislature provides for funding facilities and other capital expenditures of school districts.

Plaintiffs also contend that, similar to the decision of the Washington Supreme Court in *Seattle School District No. 1 v. State*, 90 Wash.2d 476, 585 P.2d 71 (Wash.1978), the Idaho Constitution is being violated to the extent that the school districts are required to submit special override levy elections to the voters (1) in order to fund basic maintenance and operation needs, and (2) for special facilities levies. We note that during oral argument before this Court counsel for Plaintiffs acknowledged that Plaintiffs do not now contend that the Legislature has violated the thoroughness requirement of Article IX, § 1 concerning maintenance and operation expenses other than those related to facilities. We proceed with this understanding in mind.

■ The *Seattle School District* case involved a unique state constitutional provision regarding education, placing on the Washington Legislature a "paramount duty" "to make ample provision for the education of all children residing within its borders." WASH. CONST. Art. IX, § 1. The Washington Supreme Court concluded that special levies did not satisfy the state's paramount duty of providing an education and that levies could

only be used to fund enrichment programs. *Seattle Sch. Dist.*, 585 P.2d at 93–104. The *Seattle School District* case does not persuade us to accept Plaintiffs' view of this issue. Our constitution does not make providing public education a paramount duty of the Legislature. *See Engelking*, 96 Idaho at 805, 537 P.2d at 647 (holding that the right to public education under Article IX, § 1 is not a fundamental right).

Accordingly, we affirm the trial court's grant of summary judgment to the State on these issues.

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE STATE PERMISSION TO FILE A THIRD-PARTY COMPLAINT.

■ The State asserts that the trial court should have allowed it to file a third-party complaint against superintendents of the school districts that are plaintiffs in this case. We conclude that the trial court did not abuse its discretion in denying the State's request.

Pursuant to I.R.C.P. 14(a), the State sought the trial court's permission to file a third-party complaint against the superintendents of the school districts that are plaintiffs. The State contends that if it has been deficient in providing a thorough education, any deficiency is due in whole or in part to those superintendents' (1) discretionary decisions, (2) inefficient management, (3) failure to recommend levies authorized by law or consolidation of districts, and (4) administration of the districts.

■ This Court has not previously reviewed a trial court's decision to deny a request to file a third-party complaint. In *Harris v. Rasmussen*, 106 Idaho 322, 324, 678 P.2d 114, 116 (Ct. App. 1984), our Court of Appeals employed an abuse of discretion standard to review the trial court's denial of a similar request to do so. We conclude that this is the correct standard of review. Therefore, our inquiry is: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices avail-

able to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

In *ISEEO I*, the Court concluded that superintendents had standing to sue because "the superintendents have alleged they cannot provide a thorough education to their charges due to lack of state funding." *ISEEO I*, 123 Idaho at 585, 850 P.2d at 736. The State contends that because the superintendents have standing, they can and must be brought into the suit as third-party defendants in order to assure that all persons with standing to sue are bound by any decision. In denying the State permission to file a third-party complaint, the trial court noted that I.R.C.P. 14(a) "authorizes third-party claims against 'a person not a party to the action who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against the third party plaintiff' " and that Plaintiffs' claim here is that the State has not provided sufficient funding for public education. The trial court reasoned that the State "must allege that the superintendents of school districts are wholly or partially liable for the failure of the legislature to provide adequate funding" in order to support a third-party claim. The trial court reasoned that the superintendents could not be wholly or partially liable for the failure of the Legislature to provide adequate funding. The trial court's ruling demonstrates that the trial court understood that it had discretion in making its decision, acted within the parameters of its discretion and applied the applicable rule in making its decision, and exercised reason in denying the State's motion. Therefore, the trial court did not abuse its discretion in denying the State's request.

## V.

## THE TRIAL COURT CORRECTLY DENIED DISMISSAL OF STUDENTS WHOSE SCHOOL DISTRICTS ARE NOT NAMED AS PLAINTIFFS.

■ The State asserts that the trial court should not have denied the State's request that the trial court dismiss from the case the individual plaintiffs whose school districts are not named as plaintiffs. We disagree.

The State made its request pursuant to I.R.C.P. 12(b)(7), contending that the school districts are indispensable parties because the failure of these students to receive a thorough education may be caused in whole or in part by actions taken by their own school districts and that any judgment entered with regard to the schoolchildren's claims would not bind these districts unless they are joined. "Whether or not a party is indispensable to an action depends largely upon the relief sought." *Barlow v. International Harvester Co.,* 95 Idaho 881, 896, 522 P.2d 1102, 1117 (1974).

The trial court noted that this case is not a tort action in which "joint tortfeasors may be liable for the damage caused and how much responsibility should be assigned to each" nor did the school districts "need to be parties so that the Court can mandate the delivery of services to the individual plaintiffs." The trial court ruled:

> The individual plaintiffs are not seeking any recovery, either monetarily or by injunctive relief, based upon the failure of the local school districts to perform their duties. They are seeking increased funding from the legislature. The precise manner in which the local school districts may apply any increased funding is not an issue before this Court. The board of education has general supervision of the public school system. If there is a contention that some school districts may misapply funds if they prevail, that is not an issue raised by this lawsuit.

We agree with the trial court's decision denying the State's request to dismiss the claims of these students because based on the relief Plaintiffs seek, the school districts bear no responsibility for any State failure to establish and maintain a thorough system of public, free common schools.

## VI.

### CONCLUSION

We vacate the summary judgment dismissing Plaintiffs' claim that the Legislature has failed to provide a means for school districts to provide a safe environment conducive to learning.

We affirm the summary judgment dismissing Plaintiffs' other claims.

We also affirm the trial court's denial of the State's request to file a third-party complaint and the State's request to dismiss the claims of some of the students.

We remand the case to the trial court. On remand, the trial court shall conduct a trial or other appropriate proceeding to determine whether the Legislature has provided a means to fund facilities that provide a safe environment that is conducive to learning. When the trial court has done so, it shall make its decision granting or denying relief. We do not express any opinion at this time about the appropriate relief that should be granted if the trial court decides that Plaintiffs are entitled to relief.

We award costs on appeal to Plaintiffs.

Chief Justice TROUT, Justices SILAK, WALTERS, and Justice HERNDON, Pro Tem, concur.