152 P.3d 566

**In the Matter of the Verified Petition for Writ of Prohibition and/or to Exercise Appellate Jurisdiction Over Orders of the District Court.**

**STATE of Idaho, Petitioner,**

v.

**DISTRICT COURT of the FOURTH JUDICIAL DISTRICT and Hon. Deborah A. Bail, District Judge, Respondents,**

and

**Idaho Schools for Equal Educational Opportunity (ISEEO); Twenty–Two (22) School Districts and 36 Patrons, Intervenors–Respondents.**

No. 29203.

Supreme Court of Idaho, Boise, September 2006 Term.

Jan. 26, 2007.

Hon. Lawrence G. Wasden, Attorney General, Boise, for petitioner. Michael S. Gilmore argued.

Robert E. Bakes, Special Deputy Attorney General, Boise, for respondents.

Huntley Park LLP, Boise, for intervenors-respondents. Robert C. Huntley, Jr. argued.

TROUT, Justice.

In the proceedings below, the district court appointed a special master to assist with the "remedial phase" of litigation related to the State's system of funding public schools. The district court charged the State with payment of the special master fees. In response, the State sought a writ from this Court enjoining the district court from assessing special master fees against it.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The issues in this case stem from litigation that began in 1990, the background of which is summarized in *Idaho Schs. For Equal Educ. Opportunity v. State*, 142 Idaho 450, 129 P.3d 1199 (2005) (*ISEEO V*). The current matter before the Court in this case concerns specifically the district court's appointment of a special master and the allocation of the resulting costs.

The Court's earliest decisions in this matter clarified the State's duties under the Idaho Constitution to provide a "thorough system" of funding for safe schools conducive to learning; this Court ultimately remanded to the district court the inquiry into whether the system of funding established by the Legislature met those duties. *See Idaho Schs. For Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 583, 850 P.2d 724, 734 (1993) (*ISEEO I* ) (citing Idaho Const. art. IX, § 1); *Idaho Schs. For Equal Educ. Opportunity ex. rel. Eikum v. State Bd. of Educ. ex. rel. Mossman*, 128 Idaho 276, 912 P.2d 644 (1996) (*ISEEO II* ); *Idaho Schs. For Equal Educ. Opportunity v. State*, 132 Idaho 559, 976 P.2d 913 (1998) (*ISEEO III* ). The district court held a bench trial and entered Findings of Fact and Conclusions of Law in February 2001 (2001 Decision). The district court concluded that the State's system of school funding was unconstitutional because reliance on local property taxes alone to pay for repairs or replacement of unsafe school buildings was inadequate for poorer school districts. The district court bifurcated the proceeding and the "remedy phase" of the trial was deferred to give the Legislature time to address the school funding issue. After waiting for the Legislature to respond, the district judge concluded both that the Legislature had failed to take appropriate action and that she had been tasked with finding a remedy to the problem based on the Supreme Court's decision in *ISEEO III*.

To remedy the problem, the district judge decided it was necessary for her to evaluate the present condition of Idaho's school districts and to find a cost-effective method for addressing their deficiencies. In a December 2002 written order (Order), the district court confirmed its November 2002 referral of the matter to a special master. Over the State's objection, the district court hired Charles Hummel as a special master to conduct a survey of every school district in Idaho to determine the extent of the buildings needing repair as well as the most cost-effective method of addressing the hazards they presented. In addition, as a part of the

Order, the district judge assessed all of the costs of the special master against the State, giving as a reason that "the only reason that the Court is appointing a special remedial master to assist in the remedy phase is that the Legislature has not yet established a system which would meet its responsibility to ensure that the schools had a 'safe environment conducive to learning.'"

The special master began gathering information about problems with school buildings. Seeking to stop the special master from running up significant fees, the State in December 2002, filed a petition for writ of prohibition (Petition). In response, this Court issued a temporary stay of the special master's activities pending consideration of the activities by the Court. In April 2003, the district court issued a 54(b) certificate making the 2001 Decision final and appealable and also entered an order authorizing a writ of execution to issue against the State for payment to the special master. Shortly thereafter, the State filed a notice of appeal from the 2001 Decision.

In its direct appeal, the State not only challenged the district court's decision regarding the constitutionality of the Legislature's method of funding school facilities, but also presented the same challenge regarding assessment of the costs of the special master as had been raised in the Petition. Because the issues were identical to those raised in the Petition and because the issue was pending, this Court directed proceedings relating to the State's Petition be suspended until an opinion in the latest appeal, *ISEEO V*, was issued, at which time the Court would determine what action, if any, would be appropriate. In December 2005, we affirmed the district court's conclusion the State's method of funding as it related to school facilities was unconstitutional. *See Idaho Schs. For Equal Educ. Opportunity v. State*, 142 Idaho 450, 129 P.3d 1199 (2005) (*ISEEO V*). The Court noted that issues related to the special master would be resolved when the suspended appeal was properly before the Court.

In the current proceedings, the Court now turns to the questions raised by the district court's assessment of over $11,000 in special master fees against the State.

## II. STANDARD OF REVIEW

■ Article 5, section 9 of the Idaho Constitution grants this Court original jurisdiction to issue writs of prohibition. *Clark v. Ada County Bd. of Com'rs*, 98 Idaho 749, 752, 572 P.2d 501, 504 (1977); Idaho Const. art. V, § 9 ("The Supreme Court shall also have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction."). A writ of prohibition is the counterpart of the writ of mandate and "arrests the proceedings of any tribunal ... when such proceedings are without or in excess of the jurisdiction of such tribunal...." I.C. § 7–401; I.C. § 7–302 (writ of mandate); *Rim View Trout Co. v. Idaho Dept. of Water Resources*, 119 Idaho 676, 677, 809 P.2d 1155, 1156 (1991). "[F]or the writ of prohibition to issue, it is necessary that two contingencies must be shown[:] that the tribunal, corporation, board or person is proceeding without or in excess of the jurisdiction of such tribunal corporation, board, or person, *and* that there is not a plain, speedy, and adequate remedy in the ordinary course of law." *Clearwater Timber Protective Ass'n v. District Court of Second Judicial Dist. In and For Clearwater County*, 84 Idaho 129, 369 P.2d 571, 574 (1962) (emphasis added); I.C. § 7–402. "A right of appeal is regarded as a plain, speedy and adequate remedy at law in the absence of a showing of exceptional circumstances or of the inadequacy of an appeal to protect existing rights." *Rufener v. Shaud*, 98 Idaho 823, 825, 573 P.2d 142, 144 (1977). Prohibition is primarily concerned with jurisdiction and is not available to review errors committed in the exercise of jurisdiction. *Freiburghaus v. Freiburghaus*, 100 Idaho 730, 731, 604 P.2d 1209, 1210 (1980). A writ of prohibition, like a writ of mandate, will not lie to control discretionary acts of courts acting within their jurisdiction. *See Balderston v. Brady*, 17 Idaho 567, 575, 107 P. 493, 495 (1910) ("It is obvious that if the contemplated action of the Board ... involves the exercise of a judgment or discretion vested in them by law, then this Court cannot and will not attempt to control that

discretion, or in any manner interfere with or direct the action of the Board."); *Law v. Rasmussen,* 104 Idaho 455, 457, 660 P.2d 67, 69 (1983) ("Mandamus proceeds upon the assumption that the applicant has an immediate and complete legal right to the thing demanded, and will not lie to coerce or control discretion of the district court.") (internal citations omitted); *Bower v. Morden,* 126 Idaho 215, 218, 880 P.2d 245, 248 (1994) ("This Court has consistently held that 'writs of mandate (and their counterpart, prohibition) will not issue to compel the performance of a purely discretionary function.' ") (quoting *Bopp v. City of Sandpoint,* 110 Idaho 488, 490, 716 P.2d 1260, 1262 (1986)).

■ "The writ of prohibition is a discretionary remedy, granted only when the court is satisfied that the remedy is appropriate." *Clark,* 98 Idaho at 752, 572 P.2d at 504. An applicant bears the burden of showing that the lower court is acting without or in excess of its jurisdiction. *Id.* Jurisdiction is a question of law over which this Court exercises free review. *Inland Group of Companies, Inc. v. Obendorff,* 131 Idaho 473, 474, 959 P.2d 454, 455 (1998).

## III. DISCUSSION

### A. WRIT OF PROHIBITION

■ "A writ of prohibition serves a fundamental but narrow purpose: Its office is to determine if the body whose action is challenged was attempting to act without or in excess of its jurisdiction." *Clark v. Meehl,* 98 Idaho 641, 642, 570 P.2d 1331, 1332 (1977). The State's claim that the district court exceeded its jurisdiction in awarding costs against the State is phrased in terms of statutory authority rather than personal or subject matter jurisdiction. The State is asking this Court to issue a writ of prohibition because, the State claims, the district court exceeded its jurisdiction in ordering the State to bear the costs of the special master.

The district court appointed the special master pursuant to Idaho Rule of Civil Procedure 53 (Rule 53), which addresses special masters as follows:

(a)(1) Masters—Appointment and Compensation. The court in which any action is pending may appoint a special master therein.... The *compensation* to be allowed to a master shall be fixed by the court, and *shall be charged upon such of the parties* or paid out of any fund or subject matter of the action which is in the custody and control of the court *as the court may direct.* The master shall not retain the report as security for compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

. . .

(b) Reference to a Master. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it.

I.R.C.P. 53(a)(1), (b) (emphasis added).

■ The decision to impose special master fees "as the court may direct" is, like the decision to appoint a special master, committed to the sound discretion of the trial court. *See Pena v. Westland Development Co., Inc.,* 107 N.M. 560, 568, 761 P.2d 438, 446 (N.M.App.,1988) (stating rule identical to I.R.C.P. 53(a)(1) "gives a trial court the discretion to decide who should bear the burden of paying the special master's fees and other expenses of the special master proceedings") (cited with approval in *Pioneer Sav. & Trust, F.A. v. Rue,* 109 N.M. 228, 231, 784 P.2d 415, 418 (N.M.,1989)); *Morgan v. Kerrigan,* 530 F.2d 401, 427 (1st Cir.1976) (citing F.R.Civ.P. 53(a) and noting the district court has broad discretion in determining which of the parties to charge with payment of special master fees); *U.S. v. Suquamish Indian Tribe,* 901 F.2d 772 (9th Cir.1990) (analyzing district court's imposition of special master's fees under abuse of discretion standard). In a December 12, 2003 memorandum, the State opposed the district court's application to lift

the June 2003 stay, claiming, "If [the 2001 Decision is] not affirmed on appeal, it would be possible for the Supreme Court to hold that it was an abuse of discretion to assign Special Remedial Master costs to the State...." It appears even the State concedes the district court's decision to charge the State for the special master fees is discretionary, though the State has not argued the district court abused its discretion. Also, I.R.C.P. 54(d)(1)(E) directs, "The Court may assess and apportion as costs between and among the parties to the action, in the sound discretion of the court, all fees and expenses of masters, receivers or expert witnesses appointed by the court in the action." I.R.C.P. 54(d)(1)(E).

■ Appointment of a special master and the assessment of costs are matters which clearly fall within the discretion of the district court and are, therefore, not proper for a writ of mandate or prohibition, which can issue only in matters where there is no discretion to be exercised. A trial court's assessment of costs—and, specifically, assessment of costs against the State of Idaho—are not decisions that exceed the judge's jurisdiction. Rather, they simply present the question of whether there is statutory or constitutional authority permitting the judge to do so. This case is not appropriate for the issuance of a writ of prohibition. However, the issues and arguments raised by the State in its Petition are the very same as those it previously raised on direct appeal: in each instance, the State argues that no statute authorizes assessing special costs against the State and no appropriation exists from which to pay those costs. This Court postponed consideration of the issue because the Petition was already pending. Because the issues and arguments are identical to those raised on direct appeal, and because the State is therefore not disadvantaged from having framed its case around a writ of prohibition, this Court will address the issues as though addressing them as part of the direct appeal.

## B. STATUTORY AUTHORITY

At the outset of this discussion, it is important to point out what has not been raised by the State as an issue in this case and, therefore, what issues this Court is not deciding in this opinion. The State has raised no challenge regarding the district judge's ability to appoint a special master and allocate costs, nor is the State challenging the district judge's determination under Rule 53 that exceptional circumstances existed in this case which she believed justified the appointment of a special master. Neither has the state raised a challenge regarding the level of detailed direction the special master received. The only issue the State has raised regarding the special master is a narrow one: whether or not the judge properly ordered the State to pay the special master's costs during the pendency of the litigation.

The State claims the district court erred because its December 2002 order assigning costs was issued before a final judgment was entered. The State asserts, "No Idaho statute authorizes the State's payment of costs before the issuance of final judgment." However, as noted hereafter, the State concedes the district court's decision is now final and this matter is no longer pending before the district court.

■ The State is correct that the 2002 order was issued before the district court entered a judgment. It is worth noting that neither the rules nor relevant statutes prevent the award of costs on an interim basis before the entry of final judgment. I.C. § 12–101 and Rule 53 do not differentiate between awards entered prior to final judgment and awards made as part of the final judgment. Regardless, the matter is now final, based on the April 25, 2003 order's certification in accordance with Rule 54(b) as a "final judgment" upon which execution may issue and an appeal may be taken. In oral argument the State made the timing of the award of costs the crux of its argument. In doing so, the State acknowledged that costs against the State may be awarded after entry of judgment—an argument at odds with the position in the State's brief that no statutory authority exists for the award of costs against the State in the first place. The current appeal is a part of the April 25, 2003 final judgment, and any discussion regarding

the award of pre-judgment costs is therefore resolved by the entry of judgment.

Moreover, I.C. § 1–212 recognizes the inherent power of this Court to make rules governing the procedure to be followed in all Idaho courts. The statute directs, "Costs shall be awarded by the court in a civil trial or proceeding to the parties in the manner and in the amount provided for by the Idaho Rules of Civil Procedure." I.C. § 1–212. As already noted, Rule 53 permits the assessment of special master fees "as the court may direct." The State concedes special master fees are classified as costs. *Inland Group of Companies, Inc. v. Obendorff,* 131 Idaho 473, 475, 959 P.2d 454, 456 (1998). Under Rule 54(d)(1)(E), "the Court may assess and apportion as costs between and among the parties to the action, in the sound discretion of the court, all fees and expenses of masters … appointed by the court in the action." Rule 54(d)(1)(E). In *Rickel v. Bd. of Barber Examiners,* 102 Idaho 260, 629 P.2d 656 (1981), this Court held that the award of costs and fees against the State Board of Barber Examiners in an action brought by an apprentice barber candidate was within the trial court's discretion under I.C. §§ 12–101 and 12–121. *Id.* at 261, 629 P.2d at 657. Under *Rickel,* a court may award costs against a litigant when that is permitted by the Rules of Civil Procedure. *Id.* Furthermore, as I.C. §§ 12–101 and 12–121 permit a court to award costs and fees against a municipality or county, "the same necessary implication exists to award costs and attorney fees against the state." *Id.*

■ Idaho Code section 12–101 provides clear statutory authority for the award of costs for the special master. Moreover, Rule 53 is clear in permitting the district court the authority to appoint a special master and to award costs in the district court's discretion. Special master fees are simply costs—regardless of whether they were incurred during the fact-finding or "remedial" phase of the litigation—and should not be treated differently from other costs that are on occasion awarded against the State. We affirm the district court's assessment of special master fees against the State.

## C.  APPROPRIATION

The next issue presented is whether an appropriation by the State exists to pay the special master's costs. The State argues there is no such appropriation, and consequently it has no way of paying the bill the special master has submitted to it.

■ The State points to constitutional language reading, "No money shall be drawn from the treasury, but in pursuance of appropriations made by law." Idaho Const. art. VII, § 13. Article IV, section 18 requires that claims against the State be presented to the Board of Examiners for consideration. Idaho Cost. art. IV, § 18 ("… [N]o claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."). Here, the Board of Examiners denied the special master's claim for lack of appropriation and the matter was to be submitted to the Legislature for its consideration. The Board noted the Idaho Supreme Court's authority under Article V, § 10, to make recommendations to the Legislature regarding claims for which there was no appropriation.

The State's constitutional arguments are misplaced, however, because I.C. § 12–118 provides the relevant direction as to how costs awarded against the State are to be paid. The statute expressly addresses this situation: "When the state is a party and costs are awarded against it, they must be paid out of the state treasury, and the state controller shall draw his warrant therefor on the general fund." I.C. § 12–118. The State has not shown how costs authorized and awarded against it are any different, in a separation of powers sense, from attorney fees or interest authorized and charged against the State. In none of the cases cited by the parties in which costs were assessed against the State did the Court consider the particular source from which such an assessment would be paid. In *Chastain's, Inc. v. State Tax Commission,* 72 Idaho 344, 241 P.2d 167 (1952), this Court explained that I.C. § 12–118 "provides the source from which such costs shall be paid." 72 Idaho at 350, 241 P.2d at 170. Even the *Chastain's*

Court did not identify an appropriation from which the writ of prohibition costs assessed against the State were to be paid. Because I.C. § 12–118 directs that costs awarded against the State be paid out of the general fund, it is not necessary for the Court to identify a specific source of funds.

The Court recognizes that the district judge, in assessing costs against the State, presented three possible sources from which funds to pay the special master could be drawn. Under I.C. § 12–118, the judge need only have entered an order of costs against the State. The Court is not aware of any procedure enabling a district judge to simply issue a writ of execution for the disbursement of funds in this situation. To the extent that the judge attempted to identify particular sources of funding or to issue a writ of execution, that action was unnecessary and inappropriate. Idaho Code section 12–118 is sufficient in its provision that the state controller shall draw upon the general fund to pay costs against the State. How the State proceeds with appropriation from particular accounts is the business of the State and not of this Court.

In addition to claims raised by the State, the Intervenor ISEEO also made an argument based on the Idaho Constitution to justify the award of costs against the State. Because this Court finds a statutory basis for the award of costs against the State, this case does not require us to address the arguments raised by ISEEO.

## D. ATTORNEYS FEES

ISEEO also seeks attorney fees under the private attorney general doctrine, the common fund doctrine, and I.C. §§ 12–120 and –121.

To determine whether a party is entitled to an award of attorney fees under the private attorney general doctrine, this Court considers (1) the strength or societal importance of the public policy indicated by the litigation; (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and (3) the number of people standing to benefit from the decision. *Miller v. EchoHawk*, 126 Ida-

ho 47, 49, 878 P.2d 746, 748 (1994) (citing *Hellar v. Cenarrusa*, 106 Idaho 571, 577–78, 682 P.2d 524, 530–31(1984)). The decision to award fees under this doctrine is a discretionary one. *Id.* The narrow issue before the Court in this litigation is whether the district court was empowered to order the State to pay $11,000 in special master fees, and this governs the analysis of ISEEO's claim for attorneys fees. The number of people standing to benefit from the Court's decision in the writ of prohibition matter is limited to parties in this case. In addition, the determination of whether the State must pay the costs of the special master would likely not be considered a matter of substantial public policy. For these reasons, ISEEO is not awarded its attorney fees under the private attorney general doctrine.

Neither is this case appropriate for an award of attorneys fees under I.C. §§ 12–120 and –121. Regardless, this Court need not address the statutory basis for fees because ISEEO presents no argument on this issue in its brief. *See Weaver v. Searle Bros.*, 131 Idaho 610, 616, 962 P.2d 381, 387 (1998) (denying fees where no supporting argument presented). For the foregoing reasons, ISEEO's request for attorney fees is denied.

## IV. CONCLUSION

While a writ of prohibition is not the proper procedural mechanism for deciding the issue, this Court addresses this case as if on direct appeal. We conclude that the district court had statutory authority to assess the special master's costs against the State. We award costs on appeal to Respondents District Court of the Fourth Judicial District and Hon. Deborah A. Bail.

Justice BURDICK and Judge HURLBUTT, Pro Tem CONCUR.

Justice JONES Specially Concurring.

I concur in the Court's opinion but write to express my thoughts on several matters not central to the decision. The opinion indicates that in earlier decisions the Court clarified the State's constitutional duties to provide a thorough system of funding for safe schools conducive to learning. While the

earlier decisions of the Court clarified a number of the State's responsibilities for funding public education, I do not believe that clarification has yet been provided as to what constitutes a "safe environment conducive to learning." That was the principal issue involved in *ISEEO V*. I dissented in part because there was no definition as to what constituted a safe environment that is conducive to learning.

In *ISEEO V*, I also disagreed with the conclusion that the district court's findings were supported by substantial and competent evidence. In my view, the plaintiffs failed to present an adequate case to support the district court's findings. I would have reversed the district court's decision and appointed a special master to determine the components of a safe environment conducive to learning, to evaluate the available means to fund facilities that provide such an environment, and to determine whether those means are adequate to meet the objectives. A special master can perform valuable service by focusing on specific tasks of this nature.

Utilization of a special master should be confined, however, to those circumstances where "some exceptional condition requires it." I.R.C.P. 53(b). The authority of, and questions to be addressed by, the special master should be clearly delineated by the court. Here, we are not presented with the question of whether the appointment of the special master was appropriate. The State apparently had concerns about the propriety of the appointment in earlier proceedings but has not presented them for consideration in this proceeding. The only question raised is as to the propriety of the State being required to foot the bill. Even though I have some reservations about the propriety of the district court's appointment of a special master, given the posture of the case at the time of appointment, I believe the district court had the authority to assess the costs against the State.

Justice KIDWELL, Pro Tem, dissenting.

In April of 2006, this case ("PETITION FOR WRIT OF PROHIBITION") was "set for oral argument on the issues raised by the Petition:

1. Whether the district court may issue a judgment against the state for payment of the fees of a Special Master, in the absence of a statute authorizing payment.

2. Whether the district court's assessment of the Special Master's cost against the state, in the absence of an appropriation for those costs, violates the separation of powers doctrine."

In my opinion, the Court has sidestepped the issues raised; therefore, I respectfully dissent.

The Writ of Prohibition should issue because the district court has exceeded its jurisdiction in ordering the State to pay the costs of the special master. This is not to say that special masters cannot be utilized in the appropriate case; however, here the issue has been subsumed by the external actions of the State Legislature and State Board of Examiners.

It is not conclusive to argue that this was inartfully argued or wrongfully phrased in terms of statutory authority. Jurisdictional matters cannot turn on nuances placed by the reader or a court wanting to narrow an issue, but rather must be decided by the substance of the conflict presented. Here the issue is the separation of powers clash presented when two branches of government see the issue through a different prism. Until the legislative branch of government that controls the purse strings gives its approval, no state funds exist to pay the special master.

Article IX of the Idaho Constitution provides that, "[i]t shall be the duty of the Legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools." Obviously, this means, and was specifically so held in ISEEO V, that it is the duty of the Legislature and not the courts, nor even the local school districts, to meet this mandated constitutional requirement. Further, this Court acknowledged that there would not be a remedial phase of the trial and that the responsibility to remedy an unconstitutional system is the duty of the legislative branch. The special master proceeding, as all seem to agree, is a part of the remedial phase.

Thus, given the facts before this Court and the Writ of Prohibition that has been requested, the relief should be granted and the special master should have to await action of the Legislature for his payment.